McCREA *v.* JERKATIS.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—SIGNATURES —ESTATES BY ENTIRETIES.

In suit for specific performance of alleged contract to sell plaintiff land owned by defendant husband and wife by the entireties, memorandum on which suit was based was insufficient to satisfy statute of frauds where signed by wife only (3 Comp. Laws 1929, § 13413).

2. SPECIFIC PERFORMANCE—LAND CONTRACT—FRAUD—EVIDENCE.

In suit for specific performance of alleged contract, signed by defendant wife only, to sell plaintiff a farm owned by plaintiff's brother-in-law and sister as tenants by the entireties, evidence *held,* to require finding of no fraud whatever on the part of defendant brother-in-law who had never consented to the sale, opposed it, and did nothing to lead plaintiff into buying the property.

3. COURTS—EQUALLY DIVIDED COURT.

The decision of an equally divided court makes no law.

4. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—TERMS OF CONTRACT.

Where memorandum relied on by plaintiff failed to state terms of payment of unpaid balance under alleged land contract and parties' testimony as to terms is in conflict, plaintiff would not be entitled to specific performance of such contract as there was a failure to satisfy the statute of frauds (3 Comp. Laws 1929, § 13413).

5. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS—DISCRETION OF COURT.

Where memorandum upon which plaintiff based his suit for specific performance of contract to purchase land held by defendants as tenants by the entireties was insufficient to satisfy statute of frauds in that it was signed by the wife only and failed to state terms by which unpaid balance was to be paid and defendant husband was not guilty of any fraud

Sufficiency of signature of one party under statute of frauds where two must sign, see 1 Restatement, Contracts, §§ 211, 213.

in connection with the transaction, the trial court did not abuse his discretion in denying specific performance, a remedy of grace and not of right (3 Comp. Laws 1929, § 13413).

6. APPEAL AND ERROR—EQUITY—SPECIFIC PERFORMANCE—EJECTMENT—IMPROVEMENTS.

In suit for specific performance of alleged land contract brought by one in possession of the premises upon which he had made improvements and who was defendant in ejectment action by defendants herein, decree awarding plaintiff herein cost of, improvements, less sum received in oil-lease money and disallowing plaintiff's down payment and sums he had paid for taxes and insurance, without costs *held*, equitable in view of his possession of the premises for about 11 years.

7. COSTS—EQUITY.

No costs are allowed in Supreme Court on affirmance of decree appealed from in suit for specific performance, where such decree effects an equitable settlement of the rights of the parties.

Appeal from Barry; McDonald (Archie D.), J. Submitted January 6, 1948. (Docket No. 12, Calendar No. 43,817.) Decided February 16, 1948.

Bill by Andrew McCrea against John Jerkatis and wife for specific performance of contract to sell land. Decree for defendants. Plaintiff appeals. Affirmed.

*Adelbert Cortright,* for plaintiff.

*Philip H. Mitchell,* for defendants.

BUTZEL, J. Plaintiff, Andrew McCrea, brought suit against Jean Jerkatis and John Jerkatis, his sister and brother-in-law, for specific performance of an alleged contract of sale of an 80-acre farm in Barry county. Defendants had previously begun an ejectment action against plaintiff involving the same property. The two cases came on to be heard at the same time in the court below, and it was stipulated that the equity case should be heard first, and

that, if defendants prevailed therein, judgment should be entered in their favor in the ejectment suit, subject to the right of plaintiff to make a counterclaim for the value of improvements, et cetera, made by him to the property.

Defendants acquired legal title of record to the farm in 1935 as tenants by the entireties. Plaintiff went on the farm in 1931 or 1932 under a share-crop agreement with the former owner. Plaintiff's mother lived with him on the farm until her death in 1939 or 1940. There is testimony that the defendants purchased the farm when it was offered for sale by the former owner so that plaintiff's mother and plaintiff would have a place to live.

Plaintiff testified that in 1935 or 1936 he had a discussion with the defendants at their home in Chicago, and that the defendants agreed to sell the farm to him for a cash price of $400, or if he "couldn't pay the $400 cash, it was to be $500 then, on time." In his bill of complaint plaintiff sets this date as July 1, 1935. He testified that $200 was paid by him to the defendant Jean Jerkatis, but that no arrangement was made as to when the balance was to be paid.

There is a dispute as to whether the defendant John Jerkatis was present at the time of a conversation in regard to the sale of the farm. In March, 1936, plaintiff had a conversation with Jean Jerkatis relative to the purchase of the farm, and a price of $500 was discussed. Mrs. Jerkatis contends that no definite agreement was made. Plaintiff testified that Mr. Jerkatis was present when the sale was discussed, but Mr. Jerkatis testified that he never had any conversation with plaintiff in regard to the sale of the farm, never was present when his wife had any discussion with plaintiff in regard to the sale, never gave his wife any authority to deal with

anyone, or make arrangements for the sale or disposal of the farm, and that when he learned she had received $200 from plaintiff, he told her to return the money. He further testified that when he asked later whether she had done so, she said she would return it eventually. Mrs. Jerkatis corroborates this testimony. The trial judge believed the defendants.

It appears that plaintiff has paid the taxes on the property, including certain back taxes for the years 1929 through 1934. The taxes were very small. Except for the taxes annually paid on the moratorium, they did not amount to $10 a year. Plaintiff also put a new roof on the house, repaired the chimney, installed electricity in the house, repaired the barn, and erected and repaired some fences.

The parties stipulated that the reasonable rental value of the farm from March, 1936, to August 1, 1945, was $5 per month, and $15 per month thereafter. Plaintiff received the proceeds of an oil lease for one year in the amount of $80, without objection by defendants. The property is at present insured against fire in the amount of $3,600. During the 10 or 11 years prior to the time the instant suit was begun plaintiff made no payments or tender of payments to defendants except the $200 paid to Jean Jerkatis in 1935.

In 1941 Mrs. Jerkatis wrote the plaintiff a letter as follows:

"You took over the farm four or five years, now, and haven't made the slightest effort to pay me a cent.   *   *   *

"And when you received your bonus, this one and that one was saying, 'Why don't you sell to Andy? He will have a home for the rest of his life.' And that was the biggest mistake I made in my life. I have had nothing but grief ever since.

"To hear some of them talk, you would think I got a fortuné from you. And here is exactly what I got: $200.

"I paid $21 for taxes since you took it over, and I gave you $10 when you were here, for glasses, which leaves me $169. You have had the place 4 or 5 years,—we will say 4. Interest at five per cent., which is around $64; that leaves me $105.   *   *   *

"You owe me $300, $21 taxes, $10 glasses, $64 interest,—$395. That is figuring you have the place four years. If it is five, it is $400. That would leave you about $90. So if you prefer I will leave you have the place to January, 1942, at which time you will pay me $5 a month."

Defendants plead the statute of frauds,* and plaintiff contends that the letter quoted above constitutes a sufficient memorandum of the transaction to remove the case from the operation of the statute. We shall discuss this question first.

There are two reasons why this letter is not a sufficient memorandum to satisfy the statute of frauds. In the first place, it is not signed by the defendant John Jerkatis, one of the parties to be charged, and without whose signature a deed could not be given. No fraud whatsoever has been shown on the part of defendant John Jerkatis, and in this respect the case differs entirely from *Hatch* v. *Wolack,* 316 Mich. 258, on which plaintiff relies. He never consented to the sale, but on the contrary, opposed it, and did nothing whatsoever to lead plaintiff into buying the property.

In the second place, it is not possible to determine from the letter what terms of payment were agreed upon by both the parties. In a recent case, *Goldberg* v. *Mitchell,* 318 Mich. 281, this Court was equally divided on the question whether or not a memo-

* See 3 Comp. Laws 1929, § 13413 (Stat. Ann. § 26.908).—RE-PORTER.

randum which states the amount agreed upon as the sale price of real estate, but fails to state the time or terms of payment is a sufficient memorandum to satisfy the statute of frauds. Four justices took the position that it is essential that the memorandum state the terms of payment and the time when payments are to be made. In an accompanying opinion, also signed by four justices, the view was taken that the general rule is that where the memorandum is silent as to terms of payment, it will be presumed that the sale was for cash, and the memorandum is sufficient to satisfy the statute though it fails to state the terms of payment, provided other terms of payment were not actually agreed upon by the parties. In the instant case, we have a conflict of testimony as to what the terms of payment actually agreed upon were. Plaintiff concedes that he did not agree to pay cash. He claims that no arrangements were made as to how the balance was to be paid. On the other hand, defendant Jean Jerkatis claims that there were terms and the balance was to be paid within one year.

*Goldberg* v. *Mitchell, supra,* decided by an equally divided court, made no law. Under neither opinion in that case would plaintiff be entitled to the relief he is seeking.

The trial judge held that the plaintiff's equities were not such as to move a court of equity to grant specific performance, a remedy of grace and not of right. *MacGlashan* v. *Harper,* 299 Mich. 662, 667. We shall not cite the many other cases to like effect. There was no abuse of judicial discretion.

The trial judge, in an opinion applying to both the instant case and the ejectment case, stated:

"While normally the plaintiff would be entitled to the return of the $200, he has been on the premises for approximately 11 years without the payment of

rent, other than taxes and insurance. He, however, has repaired the roof at a cost of $168, built a chimney at a cost of $100, and installed electricity at $75, making a total of $343, for which he should be given credit in the ejectment case, inasmuch as under the holding herein the plaintiff in that case is entitled to judgment for possession. Plaintiff, however, admitted receiving $80 of oil-lease money, for which the defendants should be given credit, thereby showing a balance of $263 due the plaintiff by the defendants for improvements, in the ejectment case. So far as the taxes and insurance are concerned, if the contract had been valid the plaintiff would have been obliged to pay the same.

"The amount of $263 shall be payable within 15 days, and likewise the defendants shall have the right of possession within the same time. No costs are to be taxed."

This decree furnishes an equitable settlement of the rights of the parties. It is affirmed, but, also, without costs.

Bushnell, C. J., and Sharpe, Boyles, Reid, North, Dethmers, and Carr, JJ., concurred.