TUCSON v FARRINGTON

1. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—PAROL EVI-
DENCE.

The rule of law that in order to satisfy the statute of frauds *nothing* can be left in parol has never been expressly overruled, but it has been entirely eroded by cases which display the modern trend which is to obviate overly strict reliance on the statute.

2. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—EVIDENTIARY
SUPPLEMENTATION.

An option agreement was sufficiently definite to satisfy the statute of frauds where the memorandum in question specified the location and amount of the land, the purchase price, the approximate amount of the down payment, the period of years over which the payment was to be made, and the interest rate; a court of equity by using the principle of evidentiary supplementation can fill out the details of the precise amount of the down payment, the payment schedule, and the time for transfer of possession without defeating the public policy of the state to prevent frauds.

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 February 13, 1974, at Lansing. (Docket No. 17038.) Decided May 1, 1974.

Complaint by Charles E. Tucson and Jean E. Tucson against Morris S. Farrington and Hazel Farrington for specific performance of a land contract. Judgment for plaintiffs. Defendants appeal. Affirmed in part, reversed in part, and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Statute of Frauds §§ 572–575, 606.

Failure to object to parol evidence, or voluntary introduction thereof, as waiver of defense of statute of frauds. 15 ALR2d 1330.

*Charles Rubiner* and *Arthur James Rubiner,* for plaintiffs.

*Bush, Luce, Henderson, Black & Bankson (Eugene F. Black, of counsel),* for defendants.

Before: J. H. Gillis, P. J., and Holbrook and Deneweth,* JJ.

Deneweth, J. Morris and Hazel Farrington, landowners in St. Clair County, appeal from a judgment entered against them by Judge Halford Streeter for specific performance to convey their farm. The case was tried in equity without a jury before the late Judge Stanley Schlee, who passed away before a decision was rendered. By stipulation, the parties agreed to submit the record of the trial to Judge Streeter for decision rather than going through a new trial. Given the equitable nature of an action for specific performance, this Court has reviewed the record *de novo. Johnson v Johnson,* 363 Mich 354, 357; 109 NW2d 813, 814 (1961); *Bosley v Prueter,* 44 Mich App 716, 719; 205 NW2d 861, 863 (1973).

The decision to grant specific performance was grounded on a written option agreement, drafted and signed by the Farringtons, to convey their farm to Charles and Jean Tucson. The option agreement specifically recited the location of the farm, the amount of land to be conveyed, and the purchase price of $50,000, and provided that this amount was to be paid "approximately one-third down, the balance to be paid over a period of 10 years at 7% interest". The agreement stated the duration of the option as 30 days and provided for a $100 consideration, which was paid. Within 30 days, Tucson met with the Farringtons to exercise

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the option. At that meeting it was orally agreed that the amount of the down payment would be reduced to $10,000. This modification was never reduced to writing; however, all the parties testified at trial to its validity. At this time, Mr. Tucson gave the Farringtons a check for $400 as an initial down payment and indicated that he was financially able to make the $10,000 down payment.

The above facts are not seriously disputed. But at this point in the narrative, the versions as to what further transpired diverge radically. The parties agree that two meetings followed shortly. Thereafter, the gist of Tucson's version of these encounters is that he told appellants he had with him a money order for $10,000 which he was ready and willing to negotiate to the Farringtons, but did not because they had not had a land contract drawn up as agreed. The Farringtons testified that they never saw or were offered any negotiable instruments, but rather that Tucson simply displayed to them a bank book indicating that he had the money on deposit.

Subsequently, the parties met at the office of the Farringtons' attorney where a land contract was drawn up. Tucson took the contract to his attorney who objected to various provisions and inserted modifications. During this negotiation process, the Farringtons vacated the premises so that the Tucsons might occupy the farm pursuant to oral agreement to transfer possession by a specified date. The Farringtons had purchased and remodeled another home. The Tucsons did not move to the farm when the Farringtons vacated and, shortly after the Farringtons had moved from their farm to their new home, they reoccupied the farm and sold the new home. The Tucsons later

presented the Farringtons with a land contract signed by the Tucsons which modified various terms of the Farrington's original proposed contract. The Farringtons refused to sign and further attempts to transfer the property and to negotiate a settlement proved futile and culminated in this action by the Tucsons for specific performance.

The Farringtons, the appellants, advance several arguments on appeal which challenge the trial court's grant of specific performance. The first claim is that the option agreement was not sufficiently complete, certain, and definite under the statute of frauds to justify specific performance. The Michigan statute of frauds, in pertinent part, reads:

"Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made." MCLA 566.108; MSA 26.908.

It is argued that although the agreement sufficiently describes the land, the parties, and the purchase price, provision for payment of the consideration by the words "approximately one-third down, the balance to be paid over a period of 10 years at 7% interest", coupled with lack of provision for time of transfer of possession, make the agreement sufficiently indefinite so as to come within the statute of frauds.

The agreement is alleged to be indefinite in that it would require the Court rather than the parties to determine the precise *amount* of the down payment, the fixed amounts of payments, the schedule and interval of payments, and the time of

possession, contrary to the policy behind the statute.

We reject the contention that the written agreement is insufficient to satisfy the applicable provisions of the statute of frauds. We find that it is sufficiently definite to support specific performance. Under the early rule in this state as annunciated in the case of *Gault v Stormont*, 51 Mich 636; 17 NW 214 (1883), and its progeny, the writing in this case would probably be insufficient under the statute of frauds. However, the rule set forth in *Gault* has by the subsequent line of authority in this state been so largely circumscribed as to be no longer operable as a rule.

In *Gault*, the Court held that a "receipt" which did not express the time or times of payment was an insufficient memorandum within the statute of frauds. Thus, the rule annunciated seemed to be that in order to satisfy the statute of frauds, *nothing* could be left in parol. This is no longer the rule. Although *Gault* has never been expressly overruled, it has been entirely eroded by subsequent cases, all of which seem to display the more modern trend which is to obviate overly strict reliance on the statute. In this case the writing in question specifies the location and amount of the land, the purchase price, the approximate amount of the down payment, the period of years over which the payment was to be made, and the interest rate. For examples of representative writings where, although considerably less definite than the agreement at bar, they have been found sufficient under the statute, see *Goldberg v Mitchell*, 318 Mich 281; 28 NW2d 118 (1947); *Duke v Miller*, 355 Mich 540; 94 NW2d 819 (1959); *Klymyshyn v Szarek*, 29 Mich App 638; 185 NW2d 820 (1971).

In concluding this question, we would like to quote from a relatively recent decision of the Michigan Supreme Court which contains an extremely eloquent summary of the tendency toward liberalization of the statute of frauds rule and the reasons therefore:

"What was done in *Cramer* is quite consistent with the trend of modern authority. Professor Grismore, noting this new course of the judiciary in his 'Principles of the Law of Contracts' (1947, Bobbs-Merrill), § 261, p 449, said:

" 'Preliminary to this discussion (of the statute of frauds) it is worthy of observation that the tendency, in general, has been to interpret the statute in such a way as to narrow the scope of its operation as much as possible. This result has been accomplished not only by resolving all ambiguities in the phraseology of the statute in such a way as to exclude as many cases as possible from its operation, but also by excluding cases which are within the language, on the ground that they are not within the purpose or spirit of the statute. In fact, in recent years there has been a tendency to doubt the wisdom of the statute as applied to modern conditions and to advocate its outright repeal.'

"It is not to be gainsaid that our quoted commitment to the rule of evidentiary supplementation, of an otherwise insufficient memorandum relating to sale of real estate, partially eviscerates section 8 of our statute of frauds (CL 1948, § 566.108 [Stat Ann 1953 Rev § 26.908]) as once understood and interpreted. Such being the case, it is advisable that the fact and effect be openly heralded, and that we firmly announce that which is to be in this field of law relating to rights in and titles to land. Whether the old interpretation of said section 8, or the new one, is best for society remains, and will remain, debatable. The change having taken place, we can only say that equity can and will, given appealing equities arrayed against perfidy or fast dealing, prevent most of the frauds that section 8 of this venerable statute was intended to frustrate." *Wozniak v Kuszinski,* 352 Mich 431, 434–435; 90 NW2d 456, 458 (1958).

The substantial terms were included in the case at bar. A court in equity, by using the "principle of evidentiary supplementation" as denominated by *Wozniak,* can fill out the details of the precise amount of the down payment, the payment schedule, and the time for transfer of possession without defeating the public policy of this state to prevent frauds as annunciated by the statute's requirement for definiteness in writings. As aptly noted in *Cramer v Ballard,* 315 Mich 496, 510; 24 NW2d 80, 86 (1946):

"We are mindful of the fact that this is a case in equity. The statute of frauds exists in the law for the purpose of preventing fraud or the opportunity for fraud, not as an instrumentality to be used in aid of fraud or as a stumbling block in the path of justice. While no fraud is alleged or proven in this case, an attempt is made to rely upon the statute and thereby to defeat the undisputed intent of these parties, and this in a chancery court."

Under the present interpretation of the statute, it would appear that the option agreement in question was sufficiently definite to satisfy the statute of frauds. The statute cannot be used to defeat the undisputed intent of the parties that an enforceable agreement had been reached.

Having found the option agreement to be sufficient to satisfy the statute of frauds, we now turn to an examination of the terms incident to the trial judge's grant of specific performance. In his judgment order the trial judge included provisions for a down payment of $14,500 and for payment of the balance of the purchase price together with 7% interest on unpaid balance "at any time within ten years". Counsel for the appellants contends that the decision of the trial court to decree payment of balance and interest at any time

within the ten-year period was totally oblivious of the obvious intent of the parties and would completely deprive the Farringtons of the rights which they should have if their obvious intent was to be given any consideration. We agree that this determination was erroneous. Sitting as an equity court and reviewing the record *de novo,* we find that the parties did not intend to delay payment of principal and interest until the end of the time specified for payment. The option itself upon which specific performance is granted states that payment is due *over* a period of years rather than *within* this period. Furthermore, the record clearly establishes that the parties had come to an agreement as to the schedule of payment. Provisions for payment schedules over the period were drafted both in the version of the land contract prepared for the Farringtons and in the later revised version signed and submitted by the Tucsons. We reverse the trial court's holding as to the terms of payment. It is the determination of this Court that the payment schedule as it appears in the land contract contained in plaintiffs' exhibit 8 properly reflects the agreement of the parties and should be adopted.

Further, the record is absolutely undisputed that the parties to this appeal orally agreed, subsequent to the signing of the option, to a down payment of $10,000. This conclusion is supported not only by the testimony of Mr. Tucson and Mr. and Mrs. Farrington, but is also reflected as the stated down payment contained in the aforesaid exhibit 8. Accordingly, we find that the down payment should be in the amount of $10,000.

We also find that the parties intended that possession of the property should be transferred to the purchasers upon the expiration of a reasonable

time after closing of the land contract contemplated by the parties. That this was their intent is undisputed. We thus reject the appellants' contention that possession should be delayed until the purchase price is completely paid. Therefore, possession is to be given to the vendees within 90 days from the date of the closing of the land contract for the purchase of the property in accordance with this opinion. For cases in which the Court specified a possession term which had not been in the written agreement, see *Milner Hotels, Inc v Ehrman,* 307 Mich 347; 11 NW2d 914 (1943); *Munro v Edwards,* 86 Mich 91; 48 NW 689 (1891).

The appellants' final contention that no valid tender was made is without merit. We find evidence in the record sufficient to support a conclusion that Mr. Tucson would have made the tender of the down payment required by the option agreement if the Farringtons had complied with the orally agreed upon condition precedent, *viz.,* the execution of a land contract.

The trial court's decision to grant specific performance is hereby affirmed. However, we remand the case with directions to modify the original judgment by reducing the amount of the down payment to $10,000; by adopting the payment schedule provided in the land contract drafted by the appellants and modified by the appellees (plaintiffs' exhibit 8); and by providing that the appellants' right to possession is to follow within 90 days of the closing of the land contract as heretofore specified.

Affirmed in part; reversed in part. No costs.

All concurred.