## TUCSON v FARRINGTON

Docket No. 56276. Argued November 6, 1975 (Calendar No. 10).—
Decided April 1, 1976. Rehearing denied 396 Mich 992.

Plaintiffs Charles and Jean Tucson brought a complaint for
specific performance of an agreement for the sale of realty
against defendants Morris and Hazel Farrington. A judgment
for the equitable relief requested was entered by the St. Clair
Circuit Court, Halford I. Streeter, J. The Court of Appeals, J. H.
Gillis, P. J., and Holbrook and Deneweth, JJ., affirmed but
modified certain terms of the judgment (Docket No. 17038).
Defendants appeal. *Held:*

The written memorandum of the parties' agreement is insuf-
ficient under the statute of frauds to compel its performance.
As a general rule a term of credit is an essential term of a
contract for the sale of land, and it must be stated with
substantial certainty in the written memorandum. The writing
on its face shows that deferred payments were agreed upon, but
fails to state with reasonable certainty the precise down pay-
ment, the schedule and interval of payments and the fixed
amount of payments. There was no evidence of circumstances
existing at the time the agreement was made by which the
omitted deferred payment terms might be filled in and use of
evidence concerning negotiations subsequent to the date of the
agreement to fill in those terms was erroneous.

Justice Levin, with whom Chief Justice Kavanagh concurred,
would affirm the Court of Appeals decision for the reasons
stated in that opinion.

Reversed and remanded.

53 Mich App 149; 218 NW2d 816 (1974) reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 72 Am Jur 2d, Statute of Frauds § 354.
Necessity and sufficiency of statement of consideration in contract
or memorandum of sale of land, under statute of frauds. 23
ALR2d 164.

OPINION OF THE COURT

1. FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM—SUFFICIENCY
   —DEFERRED PAYMENT TERMS.

   As a general rule, a term of credit is an essential term of a
   contract for the sale of land; credit terms must be stated with
   substantial certainty in the written memorandum of the con-
   tract and a memorandum of a land contract which lacks the
   precise down payment, the schedule and interval of deferred
   payments and the fixed amount of the payments is insufficient
   under the statute of frauds (MCL 566.108; MSA 26.908).

2. FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM—SUFFICIENCY
   —DEFERRED PAYMENT TERMS.

   A writing is not insufficient as a memorandum of a contract for
   the sale of land under the statute of frauds for failure to state
   with reasonable certainty the time and terms of payment
   (because a cash sale is presumed) unless, from the writing
   itself, it appears that deferred payments were agreed upon
   (MCL 566.108; MSA 26.908).

3. FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM—SUFFICIENCY
   —PAROL EVIDENCE.

   Use of evidence of the parties' negotiations subsequent to a
   written memorandum of an agreement for the sale of land to
   supply essential terms of the agreement which were omitted
   from it is erroneous; only evidence of circumstances existing at
   the time of the writing may be used to supplement its terms to
   show what contract was at that time under the principle of
   evidentiary supplementation.

DISSENTING OPINION

KAVANAGH, C. J., and LEVIN, J.

4. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—EVIDENTIARY
   SUPPLEMENTATION.

   *An option agreement was sufficiently definite to satisfy the stat-
   ute of frauds where the memorandum in question specified the
   location and amount of the land, the purchase price, the
   approximate amount of the down payment, the period of years
   over which the payment was to be made, and the interest rate;
   a court of equity by using the principle of evidentiary supple-
   mentation can fill out the details of the precise amount of the
   down payment, the payment schedule, and the time for trans-
   fer of possession without defeating the public policy of the state
   to prevent frauds.*

*Charles Rubiner* and *Arthur James Rubiner* for plaintiffs.

*Bush, Luce, Henderson, Black & Bankson (Eugene F. Black,* of counsel) for defendants.

FITZGERALD, J. Plaintiffs Tucson sued defendants Farrington for specific performance. Based on plaintiffs' exhibit 1,[1] the trial court found that an enforceable agreement for the sale of defendants' farm existed and entered a judgment for the equitable relief requested. The Court of Appeals, at 53 Mich App 149; 218 NW2d 816 (1974), agreed that the remedy was appropriate, but modified certain terms[2] of the trial court's judgment. We reverse, having determined that exhibit 1 is not sufficiently complete under the statute of frauds[3] to justify specific performance.

Exhibit 1 was drafted and signed by the Farringtons on June 13, 1970, at which time Mr. Tucson

---

[1]                                              13
                                        "June ~~11~~, 1970"
"TO WHOM IT MAY CONCERN:
"MORRIS S. FARRINGTON AND WIFE HAZEL AGREE TO SELL PROPERTY AT 2276 WADHAMS ROAD TO CHARLES TUCSON AND WIFE DESCRIBED AS FOLLOWS:
"S1/2 of NW1/4 EX N 900′ of W1/2 THEREOF ALSO THAT PART OF N1/2 of SW1/2 LYING N OF G.T.R.R. R-W & CONT. 81.56 A SEC 11 T6N R16E 81.56 A for the sum of fifty thousand dollars ($50,000). Approximately one third down, the balance to be paid over a period of 10 years at 7% interest. THIS OPTION TO EXPIRE IN 30 DAYS. One hundred dollars (100.00) to be paid at time of agreement with said amount to be applied on purchase price.
"Morris S. Farrington
"Hazel Farrington—9823336"

[2] The amount of down payment, the amounts and terms of deferred payments, and the date of possession.

[3] MCLA 566.108; MSA 26.908 reads in pertinent part as follows: "Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing".

delivered to them his check for $100. An addi-
tional $400 was paid to the Farringtons on July
11, 1970. These are the operative facts. If they do
not evidence a specifically enforceable agreement
for the sale of realty, the other facts of record set
forth below[4] evidence little more than five months

_____

[4] On June 23, 1970, in contemplation of the closing of this sale to
the Tucsons, the Farringtons completed purchase of a new residence
in Port Huron. On July 11, Mr. Tucson informed the Farringtons that
he was having trouble financing the "[a]pproximately one-third
down", and they agreed orally to reduce the down payment to
$10,000.

The Tucsons claimed that on July 22 and again on July 25, Mr.
Tucson showed defendants a $10,000 money order payable to the
Tucsons, and offered to negotiate this instrument to defendants upon
execution of a land contract. The Farringtons deny ever having been
shown any negotiable instrument. They testified that Mr. Tucson did
exhibit a savings account pass book on several occasions until negotia-
tions ultimately broke down, and that he told them that they would
get their money when they moved out. The parties agreed orally on
August 22 as a date for transfer of possession.

On or about August 17, Messrs. Tucson and Farrington met at the
office of the Farringtons' attorney. A draft of a land contract was
presented to Mr. Tucson who wished to consult his attorney prior to
execution. On August 20, the Tucsons' attorney wrote to defendants'
attorney suggesting various modifications to the contract and request-
ing certain information.

The Farringtons testified that they vacated the farm premises on
August 21, and moved to the residence in Port Huron which they had
purchased. They further testified that they moved back to the farm
sometime later when they discovered that the Tucsons had not
occupied the premises on August 22.

On August 24, defendants' attorney wrote plaintiffs' attorney,
agreeing to one of the modifications suggested in the correspondence
of August 20, but expressing reservations regarding language permit-
ting assignment of the contract without the seller's consent. No
further correspondence was had between the attorneys until October
7.

In the meanwhile, sometime during the month of September, the
Tucsons went to the defendants' farm and presented to them a land
contract signed by the Tucsons which modified various terms of the
Farringtons' originally-proposed contract. In particular, the contract
offered by the Tucsons would have permitted assignment without the
consent of the seller.

On October 7, the Farringtons' attorney, not having had a response
to his letter of August 24, wrote to plaintiffs' attorney requesting to
be brought up to date on the status of negotiations. On November 2,
plaintiffs' attorney responded by writing directly to the defendants
threatening suit unless the sale were closed within one week. On

of negotiations subsequent to the signing of exhibit
1—attempts by the parties either to settle terms
left undetermined in the writing, or to modify
those which had been put in written form.

On its face, exhibit 1 reveals that the parties
orally agreed to deferred payments, but it lacks
the precise down payment, the schedule and inter-
val of deferred payments, and the fixed amount of
those payments.[5] As a general rule, a term of
credit is an essential term of the contract for the
sale of land, and it must be stated with substantial
certainty in the written memorandum of such a
contract.[6] Early Michigan case law required that
payment terms be specified even in a case where it
was conceded by all concerned that payment of the
balance of the purchase price was to be made upon
delivery of the deed.[7] The rigors of the statute
were gradually relaxed, so that in Michigan, like
most jurisdictions,[8] the writing did not need to
state the time or terms of payment when the
transaction appeared to be a cash sale.[9]

November 4, defendants' attorney responded by writing to the Tuc-
sons' attorney, stating that the parties had never reached agreement,
that his clients were willing to return plaintiffs' deposit and to
continue negotiations, but that his clients had been inconvenienced by
an unnecessary change in residence and didn't want to be put
needlessly through that procedure again. Substantial changes in the
originally-offered contract were proposed. These modifications were
rejected by plaintiffs through their attorney on November 9. Plaintiffs
filed their complaint on December 14, 1970.

[5] The writing fails to fix the time of possession, although we agree
with the Court of Appeals that in this day and age parties entering
into a land contract intend, in the absence of contrary evidence, a
transfer of possession within a reasonable time after execution of the
contract.

[6] 4 Williston, Contracts (3d ed), § 575, pp 74 *et seq.*

[7] *Gault v Stormont,* 51 Mich 636; 17 NW 214 (1883).

[8] Annotation: *Necessity and sufficiency of statement of considera-
tion in contract or memorandum of sale of land, under statute of
frauds,* 23 ALR2d 164, 189–203. *See, also,* 72 Am Jur 2d, Statute of
Frauds, § 353, pp 875 *et seq.*

[9] *See Mull v Smith,* 132 Mich 618, 621; 94 NW 183 (1903). Where,

Today, it may be safely said that a writing is not insufficient under the statute for failure to state the time and terms of payment unless, from the writing itself, it appears that deferred payments were agreed upon. See *Duke v Miller,* 355 Mich 540, 543; 94 NW2d 819 (1959), where this Court unanimously adopted as controlling the opinion of Mr. Justice BUTZEL in *Goldberg v Mitchell,* 318 Mich 281, 285–290; 28 NW2d 118 (1947). However, even per *Goldberg* and *Duke,* when the writing on its face evidences deferred payments, it must state with reasonable certainty the substance of the payment terms.[10]

The Court of Appeals, relying on *Wozniak v Kuszinski,* 352 Mich 431; 90 NW2d 456 (1958), resorted to the principle of evidentiary supplementation to fill in the details which we find fatally absent from exhibit 1. In *Wozniak,* evidence of circumstances existing at the time that the writing was made was admitted for the purpose of supplementing a description of the premises.[11] In the case at bar, there is no evidence of circumstances existing at the time that exhibit 1 was made by which the unsettled deferred payment terms might be filled in. Indeed, plaintiffs Tucson testified that the terms of the parties' oral understanding were no more specific than as written in exhibit 1. The

however, it was conceded that a cash sale was not intended, omission of the disputed payment terms was fatal. *McCrea v Jerkatis,* 320 Mich 309; 31 NW2d 63 (1948).

[10] Plaintiffs maintain that the deferred payment rule has been eroded by *Goslin v Goslin,* 369 Mich 372; 120 NW2d 242 (1963). We note, however, that there was no indication on the face of the *Goslin* receipts that deferred payments were intended. Furthermore, on its facts, *Goslin* appears to have been a convincing case of part-performance sufficient to remove the agreement from the strictures of the statute.

[11] In this respect, the holding was not novel. See *Garvey v Parkhurst,* 127 Mich 368; 86 NW 802 (1901), and *Cramer v Ballard,* 315 Mich 496; 24 NW2d 80 (1946).

courts below gathered and judicially imposed terms from the parties' offers and counteroffers made during the course of negotiations subsequent to that writing. This was error. If the parties had a contract as of the date of exhibit 1, that writing is insufficient under the statute to compel its performance.

The Court of Appeals is reversed. The cause is remanded to the trial court for entry of a judgment dismissing the complaint upon payment by defendants of the $500 received in deposit, plus interest on that amount at the rate applicable to judgments. Defendants may tax costs.

WILLIAMS, COLEMAN, and LINDEMER, JJ., concurred with FITZGERALD, J.

RYAN, J., took no part in the decision of this case.

LEVIN, J. *(dissenting)*. I would affirm the decision of the Court of Appeals for the reasons stated in the opinion of that Court. *Tucson v Farrington,* 53 Mich App 149; 218 NW2d 816 (1974).

KAVANAGH, C. J., concurred with LEVIN, J.