NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0266n.06

No. 10-2226

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Mar 09, 2012**

LEONARD GREEN, Clerk

BLACKWARD PROPERTIES, LLC,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff-Appellant,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　ON APPEAL FROM THE UNITED
　　　　　　　　　　　　　　　　　　　　)　STATES DISTRICT COURT FOR THE
BANK OF AMERICA,　　　　　　　　　　　)　EASTERN DISTRICT OF MICHIGAN
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant-Appellee.　　　　　　)

Before: MOORE, SUTTON and DONALD, Circuit Judges.

SUTTON, Circuit Judge. Blackward Properties claims that LaSalle Bank (now owned by Bank of America) agreed to loan the company several million dollars to construct a multi-story office building. Yet the parties never put the agreement in writing, prompting the district court to conclude that Michigan's statute of frauds bars Blackward's claims. We affirm.

I.

As they neared retirement age, Harry Blackward and D'Anne Kleinsmith, husband and wife, invested their savings in commercial real estate. They formed Blackward Properties and purchased two adjoining pieces of land in Birmingham, Michigan, which contained a strip mall and a free-standing store. By 2006, the buildings were mostly vacant, and Blackward made plans to raze them and put up a new structure in their place.

LaSalle Bank agreed to be the anchor tenant in the new building. Blackward and LaSalle signed a lease in September 2006, in which LaSalle agreed to rent space in the building for twenty years. When the City refused to approve plans for a one-story building on the site, Blackward opted to build a multi-story office building instead. Blackward and LaSalle signed an amendment to their lease in March 2007 reflecting the change.

During discussions about the lease, LaSalle purportedly promised to finance the new building. The parties never reduced the promise to writing. Blackward applied for financing from LaSalle in June 2007, requesting a construction loan of $17.2 million. While waiting for an answer from LaSalle, Blackward demolished the existing buildings on the property in July 2007.

Shortly after the demolition, Blackward received an email from Scott McLean, LaSalle's vice president, saying that the bank would not approve the loan unless Blackward (1) put up $2 million in additional equity or (2) pre-leased an additional 20,000 square feet of office space in the building for a minimum of ten years. Blackward did neither, and LaSalle refused to approve the loan.

Blackward looked elsewhere for financing, but late 2007 was not a good time to get a loan, especially a multi-million dollar loan for an office building in Michigan with only fifteen percent of its space pre-leased. Blackward failed to obtain alternative financing. Because Blackward had demolished the buildings, the property produced no rental income. Blackward fell behind on its property taxes and mortgage payments, then lost the land to foreclosure in December 2008.

In June 2009, Blackward sued Bank of America (which had acquired LaSalle) in Michigan state court, alleging breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and fraudulent misrepresentation. The bank removed the case to federal court, and the district court granted the bank's motion for summary judgment.

## II.

*Breach of Contract*. Blackward's breach-of-contract claim runs into an initial roadblock: the statute of frauds. A three-centuries-old product of English law, the statute of frauds bars courts from enforcing certain kinds of promises unless the parties put them in writing. *See Opdyke Investment Co. v. Norris Grain Co.*, 320 N.W.2d 836, 840 (Mich. 1982). Every state other than Louisiana has adopted a version of the statute of frauds. *Id*. Michigan's law provides in relevant part:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments by the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>> A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

Mich. Comp. Laws § 566.132(2). This is not auspicious language for Blackward's claim. The statute "explicitly bars the enforcement of oral promises to extend money or credit," *Schering-Plough Healthcare Prods., Inc. v. NBD Bank, N.A.*, 98 F.3d 904, 909 (6th Cir. 1996), exactly the kind of promise Blackward tries to enforce.

Blackward insists its claim falls outside the statute because it "did not bring this lawsuit to enforce the Bank's promise to finance construction. Rather, Blackward sued because the Bank should have told Blackward that it was not going to finance the construction before it tore down the existing buildings at the Bank's request." Br. at 27. But that is not how Blackward pitched the theory in its complaint. "The Bank's promises . . . to provide financing," it alleged, "constituted a binding contract," and the bank "breached" that contract by refusing to make the loan. R. 1-2 at 6. Measured by the language of its complaint, Blackward seeks to "enforce" the bank's purported "promise . . . to lend money," which we may not do unless the promise "is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws § 566.132(2).

Even aside from the language of *its* complaint, Blackward's new characterization of the claim goes nowhere. Blackward can prevail only if the bank had a duty to inform the company it was not going to provide financing before the demolition, and the only conceivable source of that duty is a promise to lend money in the first place. At the end of the day, this is a garden-variety breach-of-contract complaint that runs into a garden-variety statute-of-frauds bar.

In the alternative, Blackward argues that it *has* the requisite writing, an August 23, 2007 email from Scott McLean, the bank's vice president. Here is what the email says:

> I have been unable to get support for your lending request as presented. . . . I think the bank was committed to financing the construction of the project when it was only a one story building. However, . . . the fact that the City of Birmingham would not allow that project to move forward and would only approve a three story building (which obviously increased the project's scope and costs) changed that commitment. Given the project's scope now and that you are proposing to start construction with

> 85% of the space unleased, the bank is not comfortable with that level of speculative office space given the state of our economy.

R. 48-36.

The McLean email does not satisfy the statute of frauds. To satisfy the statute, the document must have "substantial probative value in establishing the contract" and must reduce the "essential terms" of the agreement to writing. *Opdyke*, 320 N.W.2d at 841–42; *see Tucson v. Farrington*, 240 N.W.2d 464, 466 (Mich. 1976). The McLean email does neither. First, it *rejects* Blackward's loan request, saying "I have been unable to get support for your lending request as presented." R. 48-36. That the email later says "I think the bank was committed to financing the construction of the project when it was only a one story building," R. 48-36, shows only that there may have been a promise to finance a one-story building. But Blackward abandoned that plan when the City refused to approve it, prompting the company to try to build a multi-story building instead. The email provides no indication that the bank agreed to finance a multi-story building, the promise Blackward wishes to enforce here.

Second, the email contains none of the essential terms of a financing agreement: the amount of the loan, the interest rate, the repayment schedule or the collateral. The absence of any of these terms separates this case from *Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766 (Mich. Ct. App. 2006), where the relevant document contained the essential terms of a settlement—that the plaintiff agreed to dismiss his case with prejudice in exchange for $48,000. *Id*. at 771, 774.

Blackward persists that equitable exceptions to the statute of frauds—promissory estoppel, part performance, unjust enrichment—save its claim. Blackward is wrong on each front.

*Crown Technology Park v. D&N Bank, FSB*, 619 N.W.2d 66, 73 (Mich. Ct. App. 2000), defeats Blackward's promissory estoppel argument. The plaintiff tried to enforce a bank's oral promise to waive a prepayment penalty on a loan, a promise that fell within the same provision of the statute of frauds applicable to loan promises. *Id.* at 69–70. Rejecting the argument that promissory estoppel saved the claim, the court reasoned that the statutory language—"[a]n action shall not be brought against a financial institution to enforce [a promise to lend money] unless the promise . . . is in writing and signed," Mich. Comp. Laws § 566.132(2)—amounts to "an unqualified and broad ban" and bars "*all* actions for the enumerated promises and commitments, including actions for promissory estoppel." *Crown Tech. Park*, 619 N.W.2d at 72. "'[A]n action,' mean[s] *any* action," the court explained, and "'an action' for promissory estoppel clearly is 'an action' within the meaning of the identical language of the statute of frauds." *Id*. at 73.

Blackward objects that *Crown Technology* is merely a decision of Michigan's intermediate appellate court. That is true. It also is true that the Michigan Supreme Court has not considered the application of promissory estoppel to § 566.132(2), which went into effect on January 1, 1993. But that means only that it falls to us to "predict" how the state supreme court "would resolve the issue from all relevant data." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995). As a decision of the state court of appeals, *Crown Technology* is a highly relevant piece of data, which "should not be disregarded" in the absence of "persuasive data that the Michigan

Supreme Court would decide otherwise." *Id*.; *see also Masten v. ABN AMRO Mortgage Group*, No. 282534, 2009 WL 609408, at *1 (Mich. Ct. App. Mar. 10, 2009) (applying *Crown Technology* to bar promissory estoppel claim); *FEI Co. v. Republic Bank, SE*, No. 268700, 2006 WL 2313612, at *2 (Mich. Ct. App. Aug. 10, 2006) (same); *Wummel v. First Nat. Bank of Am.*, No. 247023, 2004 WL 842439, at *3–4 (Mich Ct. App. Apr. 20, 2004) (same). On this slate, we see no reason to think that the Michigan Supreme Court would read the statute differently.

If not promissory estoppel, what about part performance? "If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute [of frauds], equity will regard the contract as removed from the operation of the statute." *Kent v. Bell*, 132 N.W.2d 601, 605 (Mich. 1965). By demolishing the buildings, Blackward says it partly performed its end of the financing agreement. But nothing shows that tearing down the buildings was a term of the loan agreement. A debtor customarily performs its end of a financing agreement by paying back the loan. It may be that the bank threatened to cancel the *lease* if Blackward did not move forward with the construction project. But the bank's interest in urging Blackward to construct the new building does not turn demolition of the buildings into part of Blackward's obligations under a financing agreement. When it encouraged Blackward to move forward with the construction, the bank acted in its capacity as a renter, not a potential lender.

Blackward has one more strike to work with—unjust enrichment—but that does not work either. Under that doctrine, the law implies a contract if the plaintiff demonstrates two elements:

"(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to [the] plaintiff because of the retention of the benefit by [the] defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993). Blackward points to two benefits the bank received: (1) the bank had an exclusive option to provide financing, and (2) Blackward displayed a sign on the property, visible to thousands of motorists every day, advertising that a branch of the bank was "coming soon." Br. at 36–37. Even if these "benefits" had some value to the bank, the bank no longer "ret[ains]" either of them, and at any rate the "inequity" Blackward complains about—loss "of the rental income from the existing buildings," Compl., R. 1-2 at 9—did not stem from the bank's receipt of these benefits. *Barber*, 509 N.W.2d at 796.

The remedy in an unjust enrichment action at any rate is restitution. *See B & M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620, 622 (Mich. Ct. App. 1988). Blackward at most would be due the fair market value of the exclusive financing option and the advertisement on the "coming soon" sign, but Blackward introduced no evidence on either. Unjust enrichment does not save this claim.

*Fraudulent Misrepresentation*. Blackward's fraudulent-misrepresentation claim fares no better. A party generally cannot state a claim for fraudulent misrepresentation based on another party's failure to do something it promised to do in the *future*. "[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Blackward bases its claim on a promise to provide financing in the future. Even the exception to this general rule—a plaintiff may maintain a fraud action "if a promise

is made in bad faith without the intention to perform it," *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 156 (Mich. Ct. App. 2004)—does not help Blackward. Because "evidence of a broken promise is not evidence of fraud," Blackward must "show that, at the time the promise was made, [the bank] did not intend to fulfill it." *Id*. Blackward introduced no evidence that, when the bank allegedly promised to finance the new project, it had no intention of doing so.

*Covenant of Good Faith and Fair Dealing*. Blackward claims that, by refusing to provide financing, the bank breached the covenant of good faith and fair dealing applicable to the lease to occupy the to-be-constructed building. Michigan law imposes this covenant on contracting parties, but "only where one party to the contract makes its performance a matter of its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003); *see Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (Mich. Ct. App. 1984). The lease agreement is not such a contract. The lease did not leave the bank's performance to its discretion. If Blackward constructed the office building, the bank agreed to lease space in it for twenty years. No written provision in the lease required the bank to pay for construction of the building. And Blackward cannot add an oral addendum to the lease because it has a broad integration clause, representing that the written lease is the "entire agreement" between the parties and "there are no oral agreements between Landlord and Tenant affecting this Lease." R. 1-2 at 27; *see Hamade v. Sunoco Inc. (R & M)*, 721 N.W.2d 233, 248–49 (Mich. Ct. App. 2006).

III.

For these reasons, we affirm.