GEDVICK v. HILL.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—INTENT—
APPLICATION TO SELL OLD-AGE ASSISTANCE RECIPIENT'S REAL ES-
TATE.

Form petitioning director of social welfare for authority to
sell defendant old-age recipient's real estate, executed by
both the recipient and prospective purchaser, *held*, not suf-
ficient under the statute of frauds as a memorandum of
an agreed sale because not intended to function as such and
it failed to set the time of closing the transaction, the man-
ner or time of paying the purchase price or time of giving
possession to the purchaser (CL 1948, §§ 400.60, 566.108).

2. SAME—SUFFICIENCY OF MEMORANDUM.

A memorandum to transfer title to real estate, to be sufficient
under the statute of frauds, must be complete in itself and
leave nothing to rest in parol, must be certain and definite
as to the parties, property, consideration, premises, and time
of performance (CL 1948, § 566.108).

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PURCHASER IN GOOD
FAITH—SUFFICIENCY OF MEMORANDUM—STATUTE OF FRAUDS.

Whether or not defendant purchaser of farm from defendant
vendors was a purchaser in good faith need not be deter-
mined on appeal in plaintiff's suit for specific performance
of claimed previous land contract for purchase of same
farm, where it is determined that memorandum of sale upon
which plaintiff's suit was based was not sufficient to satis-
fy the statute of frauds (CL 1948, § 566.108).

Appeal from Dickinson; Dehnke (Herman), J.,
presiding. Submitted April 15, 1952. (Docket No.
66, Calendar No. 45,216.) Decided June 2, 1952.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 49 Am Jur, Statute of Frauds § 313 *et seq.*
[3] 3 Am Jur, Appeal and Error § 823.

Bill by Thorsten Gedvick against Victor Hill and others for specific performance of alleged contract to sell real estate. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*Edward J. Dundon,* for plaintiff.

*Roy R. Derham* (*Raymond Turner* and *Ernest W. Brown,* of counsel), for defendants.

NORTH, C. J. This is a suit for specific performance. Defendants have appealed from the decree in the circuit court granting the relief sought.

Defendants Hill desired to sell their farm home property in Breen township, Dickinson county. Plaintiff Gedvick owns an adjoining farm. The Hills sent word to Gedvick to ascertain if he might be interested in purchasing the Hill farm. He went to the Hill home and was told by them that the price of their property was $2,500; and, as plaintiff testified:

"I said I will pay that.  *  *  *  Victor Hill and Ida Hill said that they had to notify Reverend Mykkinen and tell him, the Lutheran Pastor at Republic about preparing papers.  *  *  *  They said something about contemplating going to live at Rev. Mykkinen's Rest Home. They said they would notify him to come down and assist them in closing the deal."

Both Mr. and Mrs. Hill are past 80 years of age; they are of Finnish nationality and speak that language, but cannot speak English. Rev. K. V. Mykkinen conducts the Serapta Rest Home at Republic. The Hills were contemplating entering the rest home after they disposed of their farm. Rev. Mykkinen took the Hills to Iron Mountain for the purpose of taking up the sale of their farm with the department

of social welfare. The parties concerned considered it necessary to obtain the approval of the department of social welfare, or the proper officer thereof, incident to the sale of the farm, because Victor Hill was receiving old age assistance. Evidently at the social welfare office a blank form was obtained, which, as there filled out and executed by the Hills, is referred to in this record as exhibit A. Plaintiff was not present at the time, but subsequently, and on the same day, he also executed exhibit A and took it back to the social welfare office in Iron Mountain. Plaintiff testified:

"At the time I signed the paper (exhibit A), I was under the impression that they couldn't sell it until they got permission from the department of social welfare. * * * I took 4 copies to the department of social aid. I thought when you get the O.K. from the welfare that they could go ahead and sell me the property. I supposed they would notify me. * * * The bureau of social aid said they would notify me when they came back. * * * Up to the time that I heard the Hills had sold the property to Gilbert Stenfors I had not received any notice from the Dickinson county bureau of social aid in regards to plaintiff's exhibit 'A'. After I heard about the alleged sale to Gilbert Stenfors, I did go to the bureau of social aid and asked for my signed copy of plaintiff's exhibit 'A'. They informed me that they would have to give it to me. They said they did not have to have any release from the welfare department to sell the property. That was why it was sent back. A release or approval was not required."

Evidently all parties concerned at the time exhibit A was executed concluded that obtaining the approval by the director of the State department of social welfare incident to the sale of the Hill farm was necessary. Doubtless this was because of the following provision in the statute:

"Any person who knowingly buys or aids or abets in buying or in disposal of the property of a person receiving assistance or relief without the consent of the director or supervisor of the State department (of social welfare), shall, if the amount involved shall be of the value of $100 or less, be deemed guilty of a misdemeanor, and shall, if the amount involved shall be 'of the value of more than $100, be deemed guilty of a felony." CL 1948, § 400.60 (Stat Ann 1949 Cum Supp § 16.460).

Pending the return of exhibit A, the defendant, Gilbert Stenfors, contacted the Hills and for the consideration of $2,500 obtained from them, by warranty deed, the title to their farm. This deed was executed and recorded on November 6, 1950. The present suit was instituted by plaintiff January 6, 1951.

The primary question in this litigation is whether the document submitted in evidence as exhibit A was intended to be a memorandum of an agreed sale of the farm, and as such constituted a sufficient compliance with the requirements of the statute of frauds touching the transfer of real property. A careful review of this record brings the conclusion that it was not sufficient for the following reason: Exhibit A was procured by the Hills and executed by them, and also by the plaintiff, not for the purpose of evidencing a contract of sale and purchase of the Hill farm, but instead for the sole purpose of complying with an assumed requirement of law which would enable the parties to consummate the transaction. The foregoing conclusion seems justified by the form and substance of the paper obtained at the Dickinson county social welfare office. This exhibit A, in large letters, is headed: "APPLICATION FOR PROPERTY TRANSFER" and beneath this heading is the following:

"State of Michigan
"Department of Social Welfare
"Lansing 4, Michigan

"* * *

"Application is hereby made to the director of the State department of social welfare for the approval to transfer the following described property, as required by section 60, Act 280, PA 1939.

(An accurate description of the property is here inserted.)

"The applicant *Victor Hill* a recipient of *Old Age Assistance* desires to transfer this property to *Mr. Thorsten Gedvick* whose relationship is *None.* The conditions of transfer, and pertinent provisions as provided for in the instrument of conveyance executed by the recipient, recorded, or to be recorded are as follows:"

At this point there is typewritten in the printed form of this exhibit A a statement of the respective ages of Mr. and Mrs. Hill; that they propose to enter the Serapta Rest Home; the sale price of the farm, which is considered to be "full value for the farm," and also some other matters not deemed material to this suit. Thereafter the printed form contains the following:

"Burial Agreement has/has not been made a part of the provisions in the instrument of conveyance. The vendee, for himself, his executors and administrators, does/does not hereby covenant to provide decent burial for the said .................... upon ............ death, and to pay all expenses for said burial, the cost of said burial not to be less than $100."

The above is followed by the witnessed signatures of the Hills and plaintiff Gedvick; and thereafter is printed on the blank form of exhibit A an "APPROVAL OF THE SUPERVISOR, BUREAU OF SOCIAL AID." This exhibit A was executed by all parties on October 26, 1950.

It appears from the record that Rev. K. V. Mykkinen took part in the execution of exhibit A because of his personal interest in the Hills, who were prospective inmates of the Serapta Rest Home. His testimony was: "I merely acted as interpreter and witness." He further testified: "I knew they had permission from the welfare department to sell the property to anyone whosoever they wanted to. I didn't pay any attention to whom they sold it." In response to a question by the circuit judge, Rev. Mykkinen also testified:

"*Judge Dehnke:* * * * Was this (that exhibit A was an application for property transfer) explained to the Hills at the time they signed it?

"*A.* Yes.

"*Q.* And what explanation was given?

"*A.* Approval for permission to sell."

This witness also testified:

"*Q.* Did you remind the Hills that they signed this agreement to purchase, plaintiff's exhibit 'A'?

"*A.* We didn't take it as an agreement. It was approval for permission to sell. * * * The Hills (at the social welfare office) were given to understand that this paper they had signed was just permission from the department of social welfare to sell the property. They were made to understand that it was like an application for permission to sell."

The requirement of the statute of frauds (CL 1948, § 566.108 [Stat Ann § 26.908]) is a written contract of sale, or some note or written memorandum of the sale, signed by the party making the sale. It quite conclusively appears from the record that exhibit A was not intended by the parties who signed it as a contract to sell, or a memorandum of a contract to sell, and should not be construed as such. In fact at the time exhibit A was executed by the parties each of them considered a sale had not been made or

finally agreed upon and could not be made until permission to sell was first obtained from the State welfare department. At the time exhibit A was signed by the Hills they were assured that they were signing it only for the purpose of obtaining "approval for permission to sell." It would be only by approving a misleading of these aged and unlettered people that exhibit A could be held to be a binding memorandum of a sale to plaintiff. Such does not appeal to equity.

Further, exhibit A is insufficient to comply with the statute of frauds in that it does not fix any of 3 important elements of the alleged agreement of sale—*i.e.:* (1) Time of closing the transaction; (2) manner or time of paying the purchase price; or (3) the time of giving possession to the purchaser. In a recent decision we have indicated the requisites of a memorandum to constitute compliance with the statute of frauds:

"Instrument presented as land contract in suit for specific performance must be taken as it is and if the parties are named and all of them signed it, the property is described, the price and terms of payment and time of performance are all definitely fixed, the instrument will satisfy the statute of frauds." *Borkowski* v. *Kolodziejski* (syllabus), 332 Mich 589.

"It has been held by this Court that a memorandum, to be sufficient under the section [of the statute of frauds] involved, * * * must be complete in itself, and leave nothing to rest in parol. *Gault* v. *Stormont,* 51 Mich 636. And that it must be certain and definite as to the parties, property, consideration, premises, and time of performance. *Rosenbaum* v. *Tyszka,* 192 Mich 457." *Cooper* v. *Pierson,* 212 Mich 657, 660.

In view of our conclusions hereinbefore noted, there is no occasion for our passing upon plaintiff's claim that the purchaser of the Hill farm, Gilbert

Stenfors, was not a purchaser in good faith. A decree may be taken in this Court dismissing plaintiff's bill of complaint, with costs of both courts to appellants.

DETHMERS, BUTZEL, CARR, SHARPE, and REID, JJ., concurred with NORTH, C. J.

BUSHNELL and BOYLES, JJ., concurred in the result.