OPDYKE INVESTMENT COMPANY v NORRIS GRAIN COMPANY

Docket No. 64246. Argued January 8, 1981 (Calendar No. 12).—Decided May 18, 1982.

Opdyke Investment Company brought an action against Norris Grain Company, Detroit Hockey Club, Inc., and Olympia Stadium Corporation for breach of a contract to develop a sports arena. The defendants moved for summary and accelerated judgment on the ground that there was pleaded only an unenforceable agreement to agree and not a binding contract. The Oakland Circuit Court, Francis X. O'Brien, J., granted accelerated and summary judgment. The Court of Appeals, J. H. Gillis, P.J., and R. M. Ransom, J. (Beasley, J., dissenting), affirmed (Docket No. 78-4280). The plaintiff appeals.

In a unanimous opinion by Justice Ryan, the Supreme Court *held:*

Summary judgment should not have been granted. The plaintiff's sworn complaint, affidavits, and other documentary evidence raise a genuine issue of material fact with respect to whether the parties intended to and in fact did agree to a binding contract. Accelerated judgment on the ground that the writing relied on did not satisfy the applicable statutes of frauds was error. The writing was sufficiently specific to satisfy the statutes in the circumstances of the case. Accelerated judgment was also inappropriate because the plaintiff's complaint states a cause of action on the theory of promissory estoppel. The judgment of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.

1. Summary judgment is inappropriate where a genuine issue

References for Points in Headnotes

[1, 2] 17 Am Jur 2d, Contracts § 26.

[1, 2, 4] 73 Am Jur 2d, Summary Judgment § 5.

[3, 4] 17 Am Jur 2d, Contracts § 67.

73 Am Jur 2d, Statute of Frauds § 296.

[5] 17 Am Jur 2d, Contracts § 89.

28 Am Jur 2d, Estoppel and Waiver § 48.

Promissory estoppel as basis for avoidance of statute of frauds. 56 ALR3d 1037.

Promissory estoppel. 48 ALR2d 1069.

of material fact is created by affidavits, pleadings, depositions, admissions, and documentary evidence which, viewed in the light most favorable to the nonmovant, might permit inferences contrary to the facts asserted in the motion.

2. A contract to make a contract is not unenforceable per se. It can fail for indefiniteness where the trier of fact determines that it does not include an essential term to be incorporated into the final contract. That the parties in this case expressly left certain matters to be negotiated in the future is some evidence that the writing was not intended to be a binding contract. Its tentative language might convince a rational trier of fact that the letter contains mere expectations rather than contractual promises. However, the fact that additional contracts may have been contemplated and mentioned in the letter would not invalidate any agreement actually reached. Whether the parties intended to be bound only by a formally written and executed document is a question of fact. Documentary evidence extrinsic to the letter permits the inference that the parties intended a binding agreement. Further support for the plaintiff's position is found in the affidavit of the plaintiff's attorney. Both the trial court and the Court of Appeals made factual inquiries in scrutinizing the letter to ascertain the parties' intent. That approach is appropriate only for a trier of fact upon consideration of all relevant evidence produced during a trial.

3. Summary judgment on the ground that the plaintiff's offer was not accepted was inappropriate. The offer in this case could bind the offerees if the "signature and delivery back" clause was not to be the exclusive mode of acceptance, if the signature requirement was met and was sufficient for acceptance, or if the defendant waived or is estopped from asserting noncompliance with the formal acceptance requirements. There are genuine issues of material fact with regard to the acceptance.

4. The statute of frauds does not require that an entire contract be written; a note or memorandum of the full contract will suffice. Extrinsic evidence may be used to supplement, but not to contradict, the terms of the written agreement. In the absence of extrinsic evidence, a court may infer that the parties intended a reasonable or good-faith term as part of the contract. The sufficiency of the memorandum for the purpose of the statute depends on the circumstances of the case. Only essential terms need be included in the writing. In this case, the exact construction site and the exact times for the completion of construction and taking of possession by the defendants

was not specified in the writing. From the letter, it is evident that the parties did not intend the precise construction site to be an essential term of the agreement. There is evidence from the pleadings, affidavits, and exhibits that the parties intended to be bound to a reasonable, good-faith selection of a building site. As to the time for completion and possession, because no time for performance appears on the face of the agreement, and there is no expression of a contrary intent, the law will presume a reasonable time. In applying the statute of frauds to the facts of the case, it is clear that the letter relied on by the plaintiff has substantial probative value in establishing a contract, and thus is sufficiently specific to satisfy the statute.

5. Questions of fact exist in the case with respect to whether the defendants made a noncontractual promise which was reasonably relied on by the plaintiff. Recovery on such a theory falls without the statute of frauds. Because the theory of promissory estoppel was sufficiently pleaded and supported, it survives the defendants' motion for accelerated judgment.

94 Mich App 770; 288 NW2d 362 (1979) reversed and remanded.

1. JUDGMENTS — SUMMARY JUDGMENTS — CONTRACTS — LETTERS OF INTENT.

Summary judgment should not be granted in an action for breach of a contract embodied in a letter of intent on the ground that the letter is only an unenforceable agreement to agree, where the plaintiff's sworn complaint, affidavits, and other documentary evidence raise a genuine issue of material fact with respect to whether the parties intended and did in fact agree to a binding contract (GCR 1963, 117.2[3]).

2. JUDGMENTS — SUMMARY JUDGMENTS — CONTRACTS — FACTFINDING.

Neither a trial court nor a reviewing court, in determining whether to grant a motion for summary judgment on the ground that there is no genuine issue as to any material fact in an action for breach of a contract embodied in a letter of intent, should scrutinize the letter in order to ascertain the intent of the parties; such a factual inquiry should be made only by the trier of fact after consideration of all relevant evidence produced during a trial (GCR 1963, 117.2[3]).

3. CONTRACTS — STATUTE OF FRAUDS.

The statute of frauds does not require that an entire contract be written, only that essential terms be included in the writing, and a note or memorandum of the full contract may be suffi-

cient under the circumstances of a case; extrinsic evidence may be used to supplement, but not to contradict, the terms of the written agreement, or, in the absence of extrinsic evidence, a court may infer that the parties intended a reasonable or good-faith term as part of the contract (MCL 440.8319, 556.108, 566.132[a]; MSA 19.8319, 26.908, 26.922[a]).

4. JUDGMENTS — ACCELERATED JUDGMENTS — CONTRACTS — LETTERS OF INTENT — STATUTE OF FRAUDS.

A letter of intent which has substantial probative value in establishing a contract and is sufficiently specific to satisfy the applicable statute of frauds is sufficient to survive a motion for accelerated judgment in an action for breach of the contract on the ground that the claim is barred by the statute (GCR 1963, 116.1[5]).

5. JUDGMENTS — ACCELERATED JUDGMENTS — PROMISSORY ESTOPPEL — STATUTE OF FRAUDS.

A claim that a noncontractual promise was made by a defendant and reasonably relied upon by a plaintiff to his detriment so as to bind the defendant on a theory of promissory estoppel, where sufficiently pleaded and supported by other documentary evidence, survives a motion for accelerated judgment on the ground that the claim is barred by the statute of frauds (GCR 1963, 116.1[5]).

*Vestevich, Dritsas, McManus, Evans & Payne, P.C.* (by *L. Stanford Evans),* and *Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *William P. Hampton)* for plaintiff.

*Beier, Howlett, McConnell, Googasian & McCann* (by *Kenneth B. McConnell)* for defendants Detroit Hockey Club and Olympia Stadium Corporation.

*Schiff, Hardin & Waite* (by *W. Donald McSweeney* and *Aaron J. Kramer)* for defendant Norris Grain Company.

RYAN, J. The plaintiff sued defendants for breach of an alleged contract to jointly develop a new sports arena for use by the defendant Detroit

Hockey Club, Inc. The trial court granted defendants' motions for accelerated judgment, GCR 1963, 116, and summary judgment, GCR 1963, 117.2(3). A divided Court of Appeals (BEASLEY, J., *dissenting)* affirmed, holding that summary judgment was appropriate because the alleged contract, as embodied in a letter dated March 11, 1977, was not intended to be a binding contract and only constituted an unenforceable agreement to agree. 94 Mich App 770; 288 NW2d 362 (1979). We disagree and reverse.

We conclude that the plaintiff's sworn complaint, affidavits and other documentary evidence raise a genuine issue of material fact as to whether the parties intended to agree and in fact agreed to a binding contract. Consequently, summary judgment should not have been granted.

I

This litigation arises out of the ill-fated plan to build a new sports arena, which was to have been called Olympia II, near the Pontiac Silverdome for primary occupancy by the Detroit Red Wings. The plaintiff alleges that the defendants breached a binding contract to jointly develop the arena on property owned by the plaintiff when they abandoned the project in favor of the City of Detroit's new riverfront arena, now known as the "Joe Louis Arena". The essential terms of the contract are allegedly embodied in a "Letter of Intent" dated March 11, 1977. The trial court granted defendants' motion for accelerated judgment, GCR 1963, 116, finding that the letter was, at most, an unenforceable agreement to agree and an insufficient memorandum to satisfy the applicable statutes of frauds. The trial judge also granted summary judgment under GCR 1963, 117.2(3), assert-

ing that the letter of intent was never accepted by "delivery back".

The plaintiff appealed the dismissal of the breach of contract claims to the Court of Appeals. That Court held that summary judgment under GCR 1963, 117.2(3) was appropriate. The statute of frauds issue was not addressed. We granted leave to appeal.

## II

The trial court and Court of Appeals agreed with the defendants, as we have noted, that the letter of March 11, 1977, was "not intended to be a binding contract but operated only as an unenforceable agreement to agree". A contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract. 1 Corbin, Contracts, § 29, p 84; see *Hansen v Catsman,* 371 Mich 79; 123 NW2d 265 (1963). Like any other contract, a contract to make a contract can fail for indefiniteness if the trier of fact finds that it does not include an essential term to be incorporated into the final contract. *Socony-Vacuum Oil Co, Inc v Waldo,* 289 Mich 316, 323; 286 NW 630 (1939). Similarly, if the agreement is conditioned on the happening of a future event that, through no fault of the parties, never happens, liability does not attach. *Professional Facilities Corp v Marks,* 373 Mich 673, 678; 131 NW2d 60 (1964): "The conditions upon which defendants' liability for a fee were to depend are not alleged to have been fulfilled at any time."

The fact that the parties in this case expressly left certain matters to be negotiated in the future is some evidence that the memorandum of March

11, 1977, was not intended to be a binding contract. The tentative language of the letter might also convince a rational factfinder that the letter contains mere expectations or intentions rather than contractual promises and undertakings. Each party may have intended to proceed at its own risk should the other party unilaterally decide to abandon the project before a legally binding final contract was executed. On the other hand, the parties may have intended to execute a series of increasingly detailed contracts as the project progressed, with each contract legally binding and protecting each party's interest in the arena project should the other party withdraw. The fact that additional contracts may have been contemplated and mentioned in the letter does not invalidate any agreement actually reached. Professor Corbin (1 Corbin, Contracts, § 29, pp 86-88) warns:

"We must not jump too readily to the conclusion that a contract has not been made from the fact of apparent incompleteness. People do business in a very informal fashion, using abbreviated and elliptical language. A transaction is complete when the parties mean it to be complete. It is a mere matter of interpretation of their expressions to each other, a question of fact."

Whether the parties intend to be bound only by a formally written and executed final document is a question of fact, not a question of law; in most cases the question is properly left to the jury. Corbin, § 30, p 97.

A genuine issue of fact is created when the affidavits, pleadings, depositions, admissions and documentary evidence, viewed in the light most favorable to the party opposing the motion, might permit inferences contrary to the facts as asserted by the movant. *Durant v Stahlin (Appeal in re*

*King, Bashara, Merrell, and Waldron),* 374 Mich 82, 88-89; 130 NW2d 910 (1964); compare *Zimmerman v Stahlin,* 374 Mich 93; 130 NW2d 915 (1964); *Durant v Stahlin (Appeal in re VanDusen, Elliott, Romney),* 375 Mich 628; 135 NW2d 392 (1965); *Durant v Stahlin (Appeal in re Brucker),* 375 Mich 665; 135 NW2d 407 (1965). Summary judgment is rarely appropriate where "motive and intent play leading roles." 374 Mich 90; see also cases cited therein.

The letter of March 11, 1977, is not free from ambiguity. The interpretation urged by defendant-appellee and adopted by the lower courts would deny the letter any contractual effect. On the other hand, the letter may have been intended to protect the interests of each party should either party unilaterally abandon the project. As dissenting Court of Appeals Judge BEASLEY declared at p 775:

"These conflicting approaches to the parties' meaning are the stuff of which ambiguity is made. If there is ambiguity, this is not a case for accelerated or summary judgment."

Documentary evidence extrinsic to the March 11 letter gives rise to an inference that the parties intended a binding agreement. An earlier letter of intent dated September 16, 1976, stated explicitly that:

"Neither party shall be liable to the other for any fees, costs or expenses incurred by reason of the good-faith pursuit of the intent of this letter."

Although extended, the September 16 letter of intent apparently expired on December 15, 1976. The deletion of the above-quoted language from

the March 11, 1977, letter suggests at least an inference that at this point the parties *did* intend to be contractually liable for such fees, costs and expenses.

Further support for plaintiff-appellant's position is found in the affidavit of plaintiff's attorney, James B. Dritsas, dated May 5, 1978, in which it is asserted that representatives of the parties were willing to be bound by a letter without an expiration date. The affidavit states in paragraph five that the relationship of the parties had changed since the drafting of the first letter of intent, when they were "unknown quantities to each other". It is reasonable to infer that since the parties "knew" each other and "were working for a common goal", they intended to contractually obligate each other to see the stadium project through to completion.

The trial court and the Court of Appeals majority carefully scrutinized the March 11 letter in order to ascertain the parties' intent. We eschew that approach, in part to emphasize that such a *factual inquiry should have been made only by a trial court factfinder* after consideration of all of the relevant evidence to be produced at trial on the point. Consequently, the Court of Appeals majority erred in finding no genuine issue as to any material fact, holding that the letter of March 11, 1977, was "not intended to be a binding contract but operated only as an unenforceable agreement to agree". 94 Mich App 774.

A similar factual dispute exists concerning the question whether the alleged contract of March 11, 1976, was ever accepted by the defendants. Generally, an offer may be accepted in any manner reasonable under the circumstances, unless the offeror specifies an exclusive mode of acceptance.

Corbin, *supra,* § 88, p 375. In this case the offer could bind the offerees if (1) the "signature and delivery back" clause was merely a suggested rather than exclusive mode of acceptance, and acceptance was made by other reasonable means;[1] or (2) the signature requirement was met and was sufficient for acceptance, delivery back being a mere courtesy not essential to acceptance; or (3) the defendant either waived or is estopped from asserting failure to comply with the formal acceptance requirements.

The trial judge correctly noted a genuine issue of material fact as to whether the defendants ever signed the letter; a similar dispute exists as to

---

[1] The concluding paragraph of the lengthy and detailed letter reads:

"If this letter properly reflects your understanding of the spirit and intent of what the parties are attempting to achieve, would you please so indicate by signing and returning one copy of this Letter of Intent.

"Very truly yours,

"OPDYKE INVESTMENT COMPANY

"By: /s/ *Robert D. Forte*
"General Partner
"Robert D. Forte

"ACKNOWLEDGED:
"Olympia Stadium Corp.
"By: ⸻
       "Bruce A. Norris
       "Its: President

"Norris Grain Company
"By: ⸻
"Bruce A. Norris
"Its: President

"Detroit Hockey Club, Inc.
"By: ⸻
"Bruce A. Norris
"Its: President

"Dated: March  , 1977"

The parties agree that the letter was not signed by Mr. Norris *and* returned to the plaintiff. The plaintiff claims, however, that there is evidence that it was signed by Mr. Norris but not returned.

whether "delivery back" was required, waived, or subject to estoppel; thus summary judgment for the defendants, based upon a finding that the alleged offer was never accepted, was inappropriate.

### III

The circuit court granted accelerated judgment for the defendants based on its finding that the March 11, 1977, letter was an insufficient note or memorandum to satisfy the requirements of the applicable statutes of frauds.[2] The plaintiff-appellant apparently concedes that at least one of the statute-of-frauds provisions cited by defendants-appellees applies, but, nevertheless, argues that the March 11, 1977, letter is sufficient to satisfy the statute and that, in any event, the complaint states a cause of action under the doctrine of promissory estoppel.

### A

The Statute of Frauds has enjoyed a position of prominence in Anglo-American jurisprudence for three centuries[3] and has proven durably resistant to continuing scholarly criticism.[4] The statute remains firmly entrenched in our law despite its repeal in England, the jurisdiction of its birth, in

[2] MCL 566.108; MSA 26.908, contract for the lease of land for a longer period than one year; MCL 566.132(a); MSA 26.922(a), an agreement by its terms not to be performed within one year; MCL 440.8319; MSA 19.8319, contract for the sale of securities.

[3] An Act for Prevention of Frauds & Perjuries, 29 Car 2, ch 3, §§ 4, 17; 5 Stat at Large 430 (1677).

[4] Perillo, *The Statute of Frauds in the Light of the Functions and Dysfunctions of Form,* 43 Fordham L Rev 39, 42, fn 29 (1974); 2 Corbin, Contracts, § 275, p 2.

1956.[5] Forty-nine states retain the statute. Louisiana, with its French civil-law heritage, is the exception. Even the modern Uniform Commercial Code includes a modified statute of frauds. UCC 2-201; MCL 440.2201; MSA 19.2201.

While the form of the statute has remained essentially unchanged over the centuries, judicial interpretation has undergone considerable evolution. The doctrine of "part performance" satisfying the statute is as old as the statute itself;[6] estoppel and promissory estoppel have developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the rule. It has been suggested that if the statute lacked such equitable "loopholes", the outcry would soon be such that amendments would be passed in short order.[7]

In contrast with American trial procedure, 17th Century English litigants and their relatives were disqualified from testifying. If a written contract did not exist, a jury was expected to discern and enforce oral contracts, even though the parties and those closest to them could not be heard or cross-examined.[8] It was thought that the requirement of a signed writing greatly enhanced a jury's ability to decide such cases correctly. As this original rationale for the rule gradually disappeared, so did the policy of strict judicial enforcement.

[5] The provisions regarding promises to answer for the debt, default or miscarriage of another, as well as contracts involving interests in real estate were retained. Decker, *The Repeal of the Statute of Frauds in England,* 11 Am Bus L J 55, 58 (1973).

[6] Note, *Statute of Frauds—The Doctrine of Equitable Estoppel and the Statute of Frauds,* 66 Mich L Rev 170, 171-172 (1967).

[7] Perillo, *supra,* p 71.

[8] *Id.,* p 67.

The issue of the legal sufficiency of a "note or memorandum" to satisfy the statute of frauds is not one of first impression in this state. The "note or memorandum" involved here, of course, is the letter of March 11, 1977.

The defendants cite *Gedvick v Hill,* 333 Mich 689, 695; 53 NW2d 583 (1952), quoting *Gault v Stormont,* 51 Mich 636, 638; 17 NW 214 (1883), as the most recent of a long line of Michigan cases requiring that "a memorandum, to be sufficient * * * must be complete in itself, and leave nothing to rest in parol." The specific holding in *Gedvick,* however, was that an agreement to sell property was, in fact, never reached; the written application for approval to sell property was not intended to be a contract. As noted in *Randazzo v Kroenke,* 373 Mich 61, 70; 127 NW2d 880 (1964), the *Gedvick* Court then "gratuitously added", in dictum, that the application would not have satisfied the statute of frauds even if an agreement had been reached.

Similarly, this Court's decision in *Tucson v Farrington,* 396 Mich 169; 240 NW2d 464 (1976), also cited to us by appellee, is inapposite. In *Tucson,* the trial court "judicially imposed terms from the parties' offers and counteroffers made during the course of negotiations subsequent to that writing. This was error." *Id.,* 175. The *Tucson* case is readily distinguishable from the case at hand because here the plaintiff seeks to supplement, explain and clarify the meaning of the writing as actually intended by the parties at the time the agreement was reached.[9]

---

[9] For purposes of this motion, we must accept as true plaintiff's factual allegation that an agreement was actually reached. Since a jury trial was demanded, that factual question must be resolved by the jury. See GCR 1963, 116.3.

Certainly nothing in the language of the statute requires adherence to the strict "nothing in parol" rule suggested in *Gedvick, supra.* The statute does not require the entire contract to be written; a "note or memorandum" of the full contract will suffice. See *Kerner v Hughes Tool Co,* 56 Cal App 3d 924; 128 Cal Rptr 839 (1976). Perhaps the "nothing in parol" notion resulted from combining the statute of frauds with the so-called "parol evidence rule", or rule against contradicting integrated writings. See *NAG Enterprises, Inc v All State Industries, Inc,* 407 Mich 407; 285 NW2d 770 (1979), *reh den* 407 Mich 1164 (1980); *Union Oil Co of California v Newton,* 397 Mich 486; 245 NW2d 11 (1976). In any event, the "nothing in parol" approach to the statute of frauds has been so dishonored in this Court that it has lost any claim to legitimacy. *Wozniak v Kuszinski,* 352 Mich 431; 90 NW2d 456 (1958); *Farah v Nickola,* 352 Mich 513; 90 NW2d 464 (1958); *Cramer v Ballard,* 315 Mich 496; 24 NW2d 80 (1946); *Goslin v Goslin,* 369 Mich 372; 120 NW2d 242 (1963); *Duke v Miller,* 355 Mich 540; 94 NW2d 819 (1959); *Goldberg v Mitchell,* 318 Mich 281; 28 NW2d 118 (1947); *Randazzo, supra.* The foregoing cases establish the principle that extrinsic evidence may be used to supplement, but not contradict, the terms of the written agreement. In the absence of extrinsic supplemental evidence, the court may infer that the parties intended a "reasonable" or "good faith" term as part of the contract.

We decline to accept the defendants' invitation to adopt narrow and rigid rules for compliance with the statute of frauds. Instead, we affirm the standard espoused by Professor Corbin and adopted by this Court in *Goslin v Goslin, supra,* 369 Mich 376:

" 'Let us proceed, therefore, with a general considera-
tion of what constitutes a sufficient note or memoran-
dum. We may well start with this one general doctrine:
There are few, if any, specific and uniform require-
ments. The statute itself prescribes none; and a study of
the existing thousands of cases does not justify us in
asserting their existence. Some note or memorandum
having substantial probative value in establishing the
contract must exist; but its sufficiency in attaining the
purpose of the statute depends in each case upon the
setting in which it is found. * * * That is the rule of
law to be applied with intelligence and discrimination
and not like a pedant playing a game of logomachy.' "

## B

The defendants-appellees assert further that the
letter of March 11, 1977, does not satisfy the
statute of frauds because it fails to specify the
exact construction site upon which the arena was
to be erected, the time for completion of construc-
tion, and the time for the defendants to take
possession. As to the time for completion and
possession, it is well-settled that when no time for
performance appears on the face of the agreement,
absent any expression of a contrary intent, the law
will presume a reasonable time. *Goslin, supra,* 375;
*Duke, supra; Goldberg, supra* (opinion of BUTZEL,
J., approved in *Duke, supra); Mull v Smith,* 132
Mich 618; 94 NW 183 (1903).

As to the construction site, it appears from the
face of the agreement that the parties agreed to a
site of "not less than 50 acres" located on the
premises owned by the plaintiff. The letter went
on to provide:

"The parties will mutually select and agree upon the
location of selected premises. The parties will also

mutually select the best available site and location for the arena building. The sites selected will be such so as not to encourage use of the Pontiac stadium parking facilities in connection with the project."

It is evident that the parties did not regard the precise construction site within the plaintiff's 117-acre parcel as an essential term of their agreement. On this basis alone it need not have been included in writing, since only "essential" terms need be reduced to writing. *Cf. Commercial Factors Corp v Zephyr Awning Corp,* 353 Mich 251; 91 NW2d 511 (1958). Further, the "best available site" within the plaintiff's tract is reasonably specific. There is evidence from the pleadings, affidavits and exhibits of record that the parties evidenced an intention to be bound to a reasonable, good-faith selection of the arena site. Finally, we note that the plaintiff has abandoned any demand for specific performance and seeks only damages. To the extent that the selection of one particular 50-acre site materially affects the computation of plaintiff's damages, the defendants are entitled to the assumption that the most advantageous site would have been selected.

In applying the statute of frauds with "intelligence and discrimination", it is clear that the March 11 letter has "substantial probative value in establishing the contract". *Goslin, supra,* 376. We therefore hold that the March 11, 1977, letter was sufficiently specific to satisfy all applicable statutes of frauds.

## C

Finally, to the extent that plaintiff's complaint states a cause of action based on "promissory estoppel", accelerated judgment was inappropriate.

This Court acknowledged this theory of recovery in *The Vogue v Shopping Centers, Inc (After Remand),* 402 Mich 546; 266 NW2d 148 (1978), without adopting any particular version of promissory estoppel. See, *e.g.,* 1 Restatement Contracts, 2d, § 90, p 242; 1A Corbin, Contracts, §§ 204-205, pp 232-250; *In re Timko Estate,* 51 Mich App 662; 215 NW2d 750 (1974). In this case, disputed questions of fact exist as to whether a noncontractual promise was made by the defendants and reasonably relied upon by the plaintiff. Since the statute of frauds only applies to certain "contracts", recovery based on a noncontractual promise falls outside the scope of the statute of frauds. The plaintiff's alternate theory of promissory estoppel is sufficiently pleaded and supported to survive the defendants' motion for accelerated judgment based on the statute of frauds.

The judgment of the Court of Appeals is reversed and the cause is remanded to the circuit court for proceedings consistent with this opinion. Costs to plaintiff-appellant. We do not retain jurisdiction.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.