*In re* FRITZ ESTATE

DONEY v KOEHLER

Docket No. 83835. Submitted February 11, 1986, at Grand Rapids. Decided April 7, 1987.

Frank L. Fritz died intestate and his halfsister, respondent Jean · Koehler, was named as personal representative of his estate. Daniel R. Doney petitioned in the Muskegon County Probate Court seeking a determination of the existence of a contract by Fritz to leave one-half of his property to petitioner by a will and for specific performance of the contract. The probate court, John J. Namenye, J., ordered specific performance of a contract to make a will in favor of the petitioner. The respondent appeals.

The Court of Appeals *held:*

A document prepared by decedent on January 7, 1984, was sufficient evidence of the parties' contract as required by MCL 700.140; MSA 27.5140. Satisfaction of § 140 alone does not, however, mandate enforcement of the purported contract. Petitioner has the burden of proving an actual express agreement. The evidence was sufficient to establish the existence of the contract. The evidence was sufficient to show that petitioner rendered the consideration of staying in the house and continuing to care for the decedent in exchange for the decedent's promise to bequeath one-half of his estate to the petitioner.

Affirmed.

1. CONTRACTS — CONTRACTS TO MAKE A WILL.

A contract to make a will or devise can be established by a writing signed by the decedent evidencing the contract; parol evidence may be admitted to prove the terms of the contract so long as the document indicates the existence of a contract (MCL 700.140; MSA 27.5140).

REFERENCES

Am Jur 2d, Evidence § 1085.

Am Jur 2d, Wills §§ 327 *et seq.*, 971.

Am Jur 2d, Witnesses § 658.

Measure of damages for breach of contract to will property. 65 ALR3d 632.

See also the annotations in the Index to Annotations under Wills.

2. CONTRACTS — CONTRACTS TO MAKE A WILL — SPECIFIC PERFOR-
    MANCE.

   Satisfaction of the statute regarding a contract to make a will or
   devise does not alone mandate enforcement of the purported
   contract; one seeking specific performance of a contract to leave
   property by a will has the burden of proving the contract and
   is required to prove clearly and convincingly an actual express
   agreement, and not a mere unexecuted intention (MCL 700.140;
   MSA 27.5140).

3. APPEAL — BENCH TRIAL — FINDINGS OF FACT.

   The Court of Appeals gives special deference to a trial court's
   findings when they are based on the credibility of the wit-
   nesses.

*Marcus, Vander Ploeg & Ruck* (by *John C. Ruck*), for petitioner.

*Charles A. Larnard III,* for respondent.

Before: D. E. HOLBROOK, JR., P.J., and SHEPHERD and D. A. ROBERSON,* JJ.

D. A. ROBERSON, J. Respondent appeals as of right from a March 4, 1985, order of the Muskegon County Probate Court, ordering specific performance of a contract to make a will in favor of petitioner. We affirm.

Frank Linden Fritz died on March 14, 1984, while vacationing on the island of St. Maarten with petitioner and another friend. The decedent died intestate and his halfsister, respondent, was named as the personal representative of his estate. Rules of intestate succession would have governed distribution of the estate but for petitioner's claim that the decedent orally contracted to make a will naming petitioner as beneficiary of one-half of his estate. Petitioner filed a petition for determination of the existence of a contract to leave property by

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

will on April 16, 1984, seeking specific performance of the contract. A hearing was held on September 10, 1984, at which time testimony was given by petitioner and numerous other witnesses. The trial court granted petitioner specific performance.

The record indicates that decedent and petitioner met in 1978, and petitioner moved into decedent's residence in North Muskegon in October, 1978. Decedent was an alcoholic and petitioner maintained the household, yard and finances as well as seeing to decedent's personal needs, such as transportation, haircuts, and other items of personal grooming. Petitioner assisted in remodeling and painting various rooms in decedent's home as part of maintaining the premises. Petitioner was also employed part-time as a beautician.

Petitioner asserts that, approximately three years into the relationship, decedent promised him one-half of his estate upon his death. The record shows that the relationship between the two men was volatile, and that decedent would often become abusive due to his alcoholism. However, when petitioner attempted to leave the residence, decedent begged him to stay and repeatedly said that everything would be bequeathed to petitioner. Decedent particularly made these promises after the two had been arguing, although he occasionally told petitioner when he became angry and inebriated that he would leave him nothing.

On January 7, 1984, shortly after decedent lost his job due to alcoholism, petitioner and decedent prepared a document setting forth decedent's wishes upon his death. Among other items, this document states that decedent wanted his estate divided equally between respondent and petitioner. The record shows that petitioner typed the docu-

ment. There was evidence that the document was taken out of the typewriter and then reinserted for typing of the sentence regarding disposition of the estate. A friend of decedent and petitioner, Thomas Bozell, was present at the time the document was prepared and witnessed it. Petitioner testified that the document was signed after it had been completely typed, and that the document had been reinserted into the typewriter in order to type the dispositionary sentence because the decedent had a difficult time deciding how to divide the items of his estate between petitioner and respondent.

Although this document did not meet the requirements of a will, it was admitted into evidence at the September 10, 1984, hearing as evidence of the contract between petitioner and decedent. When decedent died, petitioner called decedent's sister from St. Maarten and asked her to remove his personal belongings from the residence.

Friends of petitioner and decedent, Frank Gyori and Thomas Bozell, testified at the hearing. Gyori testified that decedent had mentioned to him that he could not decide whether to leave the house to petitioner and money to respondent, or to sell everything and divide the money equally. Bozell testified that decedent often made the general statement that petitioner would have nothing to worry about when decedent died.

Louise Nelson, the only witness to testify who did not know either of the parties personally, stated that, when she was in decedent's home conducting an appraisal of the household furnishings, decedent said to petitioner "this will all be yours someday anyway." Respondent testified that decedent had often assured her that she would receive the house, car and investments. The last such time she heard decedent assure her of this

was in February, 1984, just prior to his trip to St. Maarten.

Ida Anderegg, decedent's neighbor, testified that petitioner and decedent argued often and that, two days prior to the trip to St. Maarten, decedent told her that he would leave petitioner nothing upon his death. Anderegg testified that decedent was like a son to her and her husband, and that decedent had never mentioned his intention to leave petitioner anything when he died.

Isabelle VanderLaan, a friend of respondent, testified that, on the night prior to the trip to St. Maarten, decedent assured her that respondent would inherit his home if he should die. Genevieve Gerling, decedent's stepsister, testified that decedent had said that he did not wish petitioner to receive anything upon his death, and had never expressed an intention that petitioner should inherit anything. She also testified that decedent had told everyone that they would have a say in the distribution of his furniture and other items in his estate.

Marjorie Frost, another stepsister of decedent, testified that between the 6th and 8th of January, 1984, decedent stated to her that he wanted petitioner to move out of the residence when they returned from their trip to St. Maarten, and that he did not want petitioner to inherit anything.

Respondent claims on appeal that the trial court erred in finding that a contract to leave property by will existed between petitioner and decedent. Petitioner asserts that the document composed by decedent and petitioner, while ineffective as a testamentary document, was a writing signed by the decedent evidencing the existence of a contract in accord with MCL 700.140; MSA 27.5140. Section 140 provides:

(1) A contract to make a will or devise, not to revoke a will or devise, or to die intestate, if executed after the effective date of this act, can be established only by 1 of the following:

(a) A provision of a will stating material provisions of the contract.

(b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.

*(c) A writing signed by the decedent evidencing the contract.*

(2) The execution of a joint will or mutual wills does not give rise to a presumption of a contract not to revoke the will or wills.

We agree with the trial court that the document prepared by decedent was sufficient evidence of the parties' contract as required by § 140. While there appear to be no cases directly on point, judicial construction of a similar statute of frauds provision in the Uniform Commercial Code, MCL 440.2201; MSA 19.2201, is instructive.

Like § 140, MCL 440.2201; MSA 19.2201 renders certain contracts unenforceable absent some writing, signed by the party against whom enforcement is sought, sufficient to indicate that a contract has been made. The requirement does not mean that the entire contract must be embodied in the writing. Rather, so long as the document indicates the existence of a contract, parol evidence may be admitted to prove the terms of the contract. *Lorenz Supply Co v American Standard, Inc,* 419 Mich 610, 614-615; 358 NW2d 845 (1984); *In re Frost Estate,* 130 Mich App 556, 559-560; 344 NW2d 331 (1983), lv den 419 Mich 936 (1984). There are no uniform standards to be met to satisfy the statutory requirements, and each case is to be decided on its own facts. *Opdyke Investment Co v Norris Grain Co,* 413 Mich 354, 368; 320 NW2d 836 (1982).

In the instant case, the decedent prepared a document that, while not satisfying the statutory criteria for testaments, readily demonstrated his intent to bequeath one-half of his estate to petitioner. This was written evidence, signed by the decedent, of the contract now asserted by petitioner.

As was recognized by the trial court, however, satisfaction of § 140 alone does not mandate enforcement of the purported contract. By itself, the decedent's document does not prove the contract. *In re Cramer's Estate,* 296 Mich 44, 48; 295 NW 553 (1941). One seeking specific performance of a contract to leave property by will has the burden of proving the contract. *In re Cramer's Estate, supra,* 47; *Kraus v Vandevanter,* 237 Mich 168, 171; 211 NW 95 (1926). Thus, petitioner was required to prove clearly and convincingly an actual express agreement, and not a mere unexecuted intention. *Teason v Miles,* 368 Mich 414, 417-418; 118 NW2d 475 (1962).

To establish the existence of a contract, petitioner was required to prove that decedent offered to make a will leaving petitioner a portion of his estate if petitioner lived with and cared for him, that petitioner accepted this exchange and that petitioner's services constituted consideration given in return for decedent's promise. Petitioner testified that, approximately three years after petitioner had moved into decedent's home, decedent promised to bequeath petitioner part of his estate. He testified that when decedent became abusive because of his alcoholism, and petitioner prepared to leave the residence, decedent would beg him to stay and would express his intention to name petitioner as a beneficiary when he died.

While some of the testimony was conflicting, the trial court conscientiously addressed the witnesses'

credibility and resolved it in favor of petitioner. We give special deference to the trial court's findings when they are based on the credibility of the witnesses. *Kroll v Crest Plastics, Inc,* 142 Mich App 284, 288; 369 NW2d 487 (1985), lv den 423 Mich 859 (1985). We agree that the evidence was sufficient to show that petitioner rendered the consideration of staying in the house and continuing to care for the decedent in exchange for the decedent's promise to bequeath one-half of his estate to petitioner. See, *Teason v Miles, supra,* 419. Accordingly, the trial court's decision is affirmed.