*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ICONIC REAL ESTATE LLC,

    Plaintiff-Appellant,

v

ACM INVESTMENT GROUP LLC,
MICHIGAN HARVEST COMPANY LLC, and
WALLY MANJU,

    Defendants-Appellees.

UNPUBLISHED
August 25, 2022

No. 356830
Oakland Circuit Court
LC No. 2020-181883-CB

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

  ICONIC Real Estate LLC filed suit against defendants, ACM Investment Group, LLC, Michigan Harvest Company, LLC (MHC), and Walter Manju, to collect its commission for brokering defendants' purchase of certain real estate. The circuit court summarily dismissed the complaint, finding that the statute of frauds barred ICONIC's claims. While MCL 566.132(1)(e) requires that an agreement to pay a commission connected with the sale of real estate be in writing, at the time of the events in this case, a broker could raise an equitable claim for payment in certain circumstances. Accordingly, there remain questions of fact that precluded summary dismissal of ICONIC's promissory estoppel claim. We affirm in part, vacate in part, and remand for continued proceedings.

## I. BACKGROUND

  ICONIC is a licensed real estate brokerage agency. In 2018, Manju hired ICONIC to assist him in purchasing real estate through his business, MHC. Manju is the resident agent of MHC and also appears to be the sole member of ACM. This broker agreement was not reduced to writing.

  ICONIC representative Tim Shayoka introduced Manju to 725 E. Fourth St., LLC and 2505 Burdette, LLC, the sellers of a single piece of real property located at 2505 Burdette Street in Ferndale (the property). The sellers and Manju (through MHC) negotiated a purchase agreement in June 2018 (the 2018 Agreement), reciting that MHC would pay a 6% commission at closing to ICONIC. Manju signed the agreement on behalf of MHC and Gregory Cooksey signed on behalf

of both sellers. The 2018 Agreement was subsequently amended, extending the time for MHC to post the required deposit with the sellers. In conjunction with the 2018 Agreement, MHC unsuccessfully applied for a permit to open a medical marihuana provisioning center at the property location. As a result, MHC did not close on the property under the 2018 Agreement and the contract was rendered "null and void and of no further force or effect." Emails of record, however, establish that Shayoka continued to work on behalf of Manju into the summer of 2019.

In August 2019, Manju (on behalf of ACM) executed a purchase agreement (2019 Agreement) with 2505 Burdette, LLC, for the purchase of the same property under a land contract.[1] The 2019 Agreement expressly stated that ACM and 2505 Burdette, LLC did not use the services of a real estate broker or finder in connection with the 2019 transaction. ACM closed on the property under the 2019 Agreement and did not pay a commission to ICONIC.

ICONIC initiated this case against defendants, alleging breach of contract and promissory estoppel based on the oral agreement between ICONIC and defendants regarding the payment of commissions. In lieu of filing an answer, defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8), arguing that ICONIC's claims were barred by MCL 566.132(1)(e) and (3) of the statute of frauds, and that Manju should be dismissed from the suit because he was not personally liable for the corporate entities. The trial court granted summary disposition to defendants under MCR 2.116(C)(7), concluding that MCL 566.132(1)(e) and (3) barred ICONIC's claims. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). Under MCR 2.116(C)(7), a party is entitled to summary disposition if dismissal of the action is appropriate based on the statute of frauds. MCR 2.116(C)(7). When reviewing a motion under MCR 2.116(C)(7):

> This Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Hutchinson v Ingham Co Health Dep't*, 328 Mich App 108, 123; 935 NW2d 612 (2019) (cleaned up).]

The applicability of a legal doctrine, such as promissory estoppel, is a question of law reviewed de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). "Issues involving the proper

---

[1] It is unclear from the record why the second seller was no longer involved in the transaction.

interpretation of statutes and contracts are also reviewed de novo." *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 402; 927 NW2d 717 (2018).

## III. ANALYSIS

Michigan's statute of frauds is memorialized in MCL 566.132. MCL 566.132(1)(e) provides:

> In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:

> \* \* \*

> (e) An agreement, promise, or contract to pay a commission for or upon the sale of an interest in real estate.

Paragraph 10 of the 2018 Agreement recited that ICONIC was the only real estate broker involved in the transaction and stated that MHC would pay ICONIC's 6% broker commission upon closing. However, the sale never reached closing and the contract was rendered null and void. While ¶ 12 of the 2018 Agreement indicated that specifically identified provisions would survive the contract's termination, ¶ 10 was not singled out in this manner. No other writing memorialized the agreement between ICONIC and defendants. Therefore, the broker commission agreement did not comply with the statute of frauds.

In its complaint, ICONIC attempted to avoid the statute of frauds by raising the procuring cause doctrine. The procuring cause doctrine provides that an "agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale." *Reed v Kurdziel*, 352 Mich 287, 294; 89 NW2d 479 (1958). The doctrine protects sales representatives who are terminated by their employers and cut out on future commissions for sales they procured for the company. See *id*. at 294-295; *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 673-675; 816 NW2d 464 (2012). The doctrine "applies when the parties have a contract governing the payment of sales commitments, but the contract is silent regarding the payment of posttermination commissions." *KBD & Assoc*, 295 Mich App at 673. This equitable doctrine is highly specific. It requires a valid contract that is simply missing some elements. As a contract for commissions connected with a real estate transaction must be in writing, this case is distinguishable from those providing posttermination commissions based on oral contracts in other arenas. The procuring cause doctrine does not apply in this matter.

However, the trial court erred in summarily dismissing Count II seeking redress under the theory of promissory estoppel. The court relied upon MCL 566.132(3) to find that the statute of frauds barred ICONIC's equitable claim. MCL 566.132(3) does prevent a party from "bring[ing] an action to enforce an agreement, promise or contract to pay a commission for or upon the sale of an interest in real estate . . . unless the agreement, promise, or contract is in writing signed by the party to be charged." But the statute did not take effect until March 17, 2020, several months

after the 2019 Agreement was executed and ICONIC was denied its commission. And until the Legislature enacted this provision, parties could seek equitable relief to avoid draconian results from the over-mechanical application of the statute of frauds.

In her concurrence to the order denying leave to appeal in *North American Brokers, LLC v Howell Pub Sch*, 502 Mich 882, 882-884; 913 NW2d 638 (2018), Justice MCCORMACK described the history of the statute of frauds and the historically accepted equitable exceptions to the writing mandates. She noted, "From its inception, then, there was agreement that exceptions to the statute of frauds were needed in order to prevent the statute itself from perpetuating frauds." *Id.* at 884. These exceptions include equitable and promissory estoppel. *Id.* Justice MCCORMACK continued that Michigan's first statute of frauds was enacted in 1838 and courts had applied "equitable estoppel for nearly a century to prevent the statute from becoming 'an instrument of fraud.' " *Id.*, quoting *Lyle v Munson*, 213 Mich 250, 260; 181 NW 1002 (1921). "We have reaffirmed that principle time and time again," Justice MCCORMACK emphasized. *North American Brokers*, 502 Mich at 884, citing *Brummel v Brummel*, 363 Mich 447, 452; 109 NW2d 782 (1961) (citing cases).

Moreover, up to that point, the Legislature had also reaffirmed this practice. The Legislature amended the statute of frauds in 1945, 1974, and 1992 "and never repudiated the statute's estoppel-based exceptions." *North American Brokers*, 502 Mich at 884. "When the Legislature reenacts a statute, we presume it did so with an understanding of the court's interpretation of it. The doctrine has withstood the tests of time, and legislative and judicial scrutiny." *Id.*

Justice MCCORMACK concluded this analysis with a more current case:

> [T]his Court affirmed promissory estoppel in *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354; 320 NW2d 836 (1982). There we declined to adopt "narrow and rigid rules for compliance with the statute of frauds." *Id.* at 367. Instead, we unanimously held that "recovery based on a noncontractual promise falls outside the scope of the statute of frauds" and that the plaintiff's claim of promissory estoppel required the denial of the defendant's summary disposition motion. *Id.* at 370. This conclusion was necessary to "avoid the arbitrary and unjust results required by an overly mechanistic application of the rule." *Id.* at 365. [*North American Brokers*, 502 Mich at 884.]

The facts as alleged in ICONIC's complaint create a triable factual question that Manju orally promised to pay ICONIC a broker fee for its services, that ICONIC fulfilled its end of the bargain, and that defendants breached the obligation to pay for the services ICONIC had provided for over a year. Accordingly, the trial court erred in dismissing ICONIC's promissory estoppel claim.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michelle M. Rick