*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA PARKER,

        Plaintiff-Appellant,

v

DEARBORN PUBLIC SCHOOLS,

        Defendant-Appellee.

UNPUBLISHED
October 1, 2019

No. 344897
Wayne Circuit Court
LC No. 17-005122-CD

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition as to plaintiff's claims for a violation of the Elliott-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq*., breach of contract, and promissory estoppel. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff has a bachelor's degree in English, a master's degree in special education, and a master's degree in educational technology. Plaintiff had a lengthy history of teaching, going back to the late 1990s. In October 2016, plaintiff accepted a position working as a special education teacher with Westwood Community School District (Westwood) at Robichaud High School.

While working for Westwood, plaintiff, who was 60 years old at the time, applied to be a special education teacher with defendant in November 2016. Mike Esseily, a special education coordinator for defendant, contacted plaintiff and asked her to interview; plaintiff's first interview took place on November 29, 2016. In December 2016, plaintiff interviewed for a second time with members of the special education hiring committee. Plaintiff thereafter was recommended for hire by the committee and scheduled to begin work with defendant as a special education teacher. During plaintiff's intake meeting on January 19, 2017, plaintiff completed some paperwork and drafted a letter introducing herself to her new students. During the meeting, plaintiff presented her identification to Robert Seeterlin, the Human Resources (HR) director, in order for Seeterlin to conduct a background check; during the intake, plaintiff also conveyed to Seeterlin that Esseily had previously told plaintiff that a salary of $47,000 was

-1-

available for the position. Seeterlin suspended the intake because he was not sure whether he could offer plaintiff $47,000. Following the intake, defendant declined to hire plaintiff on the day she was to begin working for defendant. Fatemah Beydoun, who was 30 years younger than plaintiff, was hired for the position that plaintiff initially was supposed to fill.

Plaintiff filed a claim for violation of the CRA on the basis of age discrimination, as well as claims for breach of contract and promissory estoppel. The trial court granted defendant's motion for summary disposition as to all claims, and this appeal ensued.

## I. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). A motion for summary disposition under MCR 2.116(C)(10)[1] challenges the "factual adequacy of a complaint on the basis of the entire record, including affidavits, depositions, admissions, or other documentary evidence." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A trial court's grant of summary disposition under MCR 2.116(C)(10) is proper when the evidence, "viewed in the light most favorable to the nonmoving party, show[s] that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey*, 500 Mich at 5. " 'A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Gorman*, 302 Mich App at 116 (citation omitted).

## II. CRA CLAIM

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition as to her CRA claim because she claims that she presented sufficient evidence to create a genuine issue of material fact as to whether defendant's reasons for not hiring plaintiff were a pretext for age discrimination. We agree.

Under MCL 37.2202(1)(a), an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." "Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Major v Village of Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016) (quotation marks and citation omitted). When there is no direct evidence, as is the case here, "a plaintiff must establish a prima facie case of age discrimination by proving that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a younger person." *Id*. at 540-541

---

[1] While defendant moved for summary disposition under both MCR 2.116(C)(8) and (C)(10), the trial court expressly stated it was relying on materials outside the pleadings and was granting the motion pursuant to MCR 2.116(C)(10). Thus, our review of the court's decision is performed pursuant to MCR 2.116(C)(10).

(quotation marks and citation omitted). Once the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Id*. at 541. If the defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, "a plaintiff must then present evidence that the explanation provided by his or her employer constituted a pretext for discrimination." *Id*. at 542. A plaintiff can establish a pretext in the following ways:

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Id*. at 542 (quotation marks and citation omitted).]

In other words, "[a]t that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Hazle v Ford Motor Co*, 464 Mich 456, 465; 628 NW2d 515 (2001).

Plaintiff established a prima facie claim of age discrimination. There is no dispute that plaintiff was a member of a protected class at the time she applied for the position with defendant. As to the second element, this Court has stated that there is no exhaustive list of adverse employment actions and "typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Pena v Ingham Co Rd Comm'n*, 255 Mich App 299, 312; 660 NW2d 351 (2003). Plaintiff had been recommended for a teaching position with defendant and already had been scheduled to start work with defendant; defendant announced the decision not to hire her on the day she was to begin work. Defendant's decision to not carry through with hiring plaintiff thus constituted an adverse employment action. Plaintiff also was qualified for the position. She had years of teaching experience, as well as a master's degree in special education and a master's degree in educational technology. The position for which plaintiff was recommended was given to Beydoun, a younger individual; Beydoun applied for the position on January 18, 2017, and interviewed for the position on January 24, 2017, the day after plaintiff was scheduled to begin working for defendant; Beydoun began working for defendant on February 7, 2017, and she was officially hired by the school board on February 13, 2017. Thus, plaintiff established a prima facie case of employment discrimination, shifting the burden to defendant to present a legitimate, nondiscriminatory reason for not hiring plaintiff.

In order to present a legitimate, nondiscriminatory reason for the adverse employment action, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Lytle v Malady*, 458 Mich 153, 173-174; 579 NW2d 906 (1998). In the trial court, defendant offered four reasons for not hiring plaintiff: (1) plaintiff made a material misrepresentation to Seeterlin during the intake process when she was untruthful

regarding the salary allegedly offered by Esseily during the interview process, (2) plaintiff failed to include her most recent employer and salary information on her employment application, (3) plaintiff unprofessionally resigned from her position with Westwood before defendant extended her an offer of employment, and (4) plaintiff's most recent employer, Westwood, provided a "mixed" reference. All of these reasons were legitimate, nondiscriminatory reasons for deciding not to hire plaintiff. Therefore, the burden shifted to plaintiff to present evidence that defendant's reasons were a pretext for unlawful discrimination.

Plaintiff first argues that defendant's ever-changing rationale for not hiring her supports a finding of pretext. We agree that differing accounts for the rationale underlying an adverse employment decision can be evidence of pretext. See *Thurman v Yellow Freight Sys, Inc*, 90 F3d 1160, 1167 (CA 6, 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."); *Edwards v US Postal Serv*, 909 F2d 320, 324 (CA 8, 1990).[2] In this case, defendant's position as to why it did not hire plaintiff changed over time.

On January 20, 2017, Seeterlin told plaintiff that he was not sure plaintiff would be hired due to her "district hopping." In an interrogatory, defendant was asked to "[l]ist *all* of the reasons that Dearborn Public Schools decided not to hire Parker." (Emphasis added.) In response, defendant did not rely on plaintiff's supposed "district hopping" and instead stated only that defendant did not hire plaintiff because it had "concluded that Plaintiff had made material misrepresentations in discussing her salary expectations with representatives of [defendant]." Defendant provided no other reason during discovery. In defendant's motion for summary disposition, defendant again asserted that plaintiff had made a material misrepresentation during the intake when she told Seeterlin that Esseily offered her $47,000. However, defendant also asserted, for the first time, four new reasons that it did not hire plaintiff: (1) plaintiff also mispresented that Esseily had told her to resign from Westwood; (2) her application was incomplete, as it did not include her current employer or her current salary; (3) plaintiff unprofessionally resigned from her position with Westwood before defendant extended her an offer of employment; and (4) plaintiff's most recent employer, Westwood, provided a "mixed reference." Thus, while defendant initially voiced concern over plaintiff's perceived "district hopping," in later stages of the litigation defendant never cited that as a basis for its decision. And after it stated in its answers to interrogatories that *there was only a single reason for denying employment to plaintiff*, defendant thereafter cited four different reasons. Viewed in a light most favorable to plaintiff, this changing rationale for not hiring plaintiff would permit a jury to find pretext for discrimination.[3] See *Thurman*, 90 F3d at 1167.

---

[2] Although not binding on state courts, federal decisions can be highly persuasive, especially in employment discrimination cases. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004); *Northville Pub Sch v Mich Civil Rights Comm*, 118 Mich App 573, 576; 325 NW2d 497 (1982).

[3] Further, on January 23, 2017, the day plaintiff was to begin working for defendant, plaintiff was notified by Alma Alcodray, an employee of defendant, that defendant would not be hiring

Plaintiff also argues that she established that there is a genuine issue of material fact as to whether defendant discriminated against her on the basis of her age because defendant's reasons for not hiring plaintiff, as stated in its motion for summary disposition, either have no basis in fact or were not the motivating factors for not hiring her. We agree.

Defendant asserted that it did not hire plaintiff because she twice misrepresented conversations with Esseily—once when she claimed that Esseily offered her $47,000, and once when she said Esseily had told her to resign from Westwood. The only evidence that plaintiff ever communicated to a staff member of defendant that Esseily had directed her to resign from Westwood was in an e-mail that plaintiff sent to Glenn Maleyko, defendant's superintendent, on January 23, 2017; that date, however, *was after defendant already had told plaintiff that she was not going to be hired*. Thus, the information contained in that e-mail necessarily could not have been the basis for defendant's decision to not hire plaintiff.

There is no dispute, however, that plaintiff told Seeterlin during the intake meeting that Esseily had told her that $47,000 was available for the position. The parties dispute whether Esseily had actually told plaintiff that a salary of $47,000 was available for the position. But defendant argues that, even if defendant later discovered that Esseily was untruthful when he denied that he had told plaintiff that $47,000 was available for the position, defendant's reliance on Esseily's assurance that he never had this conversation with plaintiff was nevertheless legitimate and nondiscriminatory. Our Supreme Court has stated that "[t]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Hazle*, 464 Mich at 476. Therefore, because defendant could have legitimately believed that plaintiff misrepresented the nature of her conversations with Esseily, the question is whether plaintiff presented evidence to create a genuine issue of material fact as to whether a belief that plaintiff misrepresented her conversations with Esseily was defendant's motivating factor for not hiring her, as opposed to her age.

Prior to plaintiff's intake meeting, she was recommended for hire by the hiring committee and plaintiff was scheduled to begin teaching for defendant; a new hire recommendation form completed on January 6, 2017, stated that plaintiff's first day of work initially was scheduled for January 9, 2017. However, plaintiff notified Esseily that she could not begin work until January

---

her. After being asked for an explanation as to why plaintiff would not be hired, Alcodray said that she was "not at liberty" to tell plaintiff. Logically, this statement would mean that Alcodray was stating that defendant's internal policies prevented her from disclosing the reason to plaintiff. Indeed, Alcodray admitted as much in an e-mail dated January 26, 2017, in which she referenced "reiterat[ing] what [was] said and that as policy, we do not discuss specific details." However, Seeterlin, the director of defendant's HR department, admitted during his deposition that he was unaware of any policy that prevented defendant from explaining to plaintiff why she was not hired. Thus, when viewed in a light most favorable to plaintiff, Alcodray's statement could be found to have been intentionally false, and while not a true "changing rationale," the evidence of this dishonest answer could be viewed as evidence of pretext.

20, 2017. On January 10, 2017, Esseily recommended plaintiff for a "step five" salary because he did not want defendant "put in a situation where [plaintiff] is turning down our job offer"; in the recommendation, Esseily listed numerous reasons why plaintiff should be given a salary higher than step three. As of January 19, 2017, plaintiff was scheduled to begin working for defendant on January 24, 2017, the Monday after her last day at Robichaud. During the January 19, 2017 intake interview, plaintiff presented her identification (which contained her birthdate) to Seeterlin, and she testified that she felt that the mood in the room shifted when Seeterlin returned with her identification. After Seeterlin returned with her identification, plaintiff also conveyed to Seeterlin that Esseily had previously indicated to her that a salary of $47,000 was available for the position; after this conversation, Seeterlin suspended the intake to determine whether a higher salary was available.

Following the intake interview, a series of e-mails on January 19 and January 20 indicated that Esseily had misunderstood the process of recommending salaries to potential candidates. In the afternoon of January 19, 2017, after the intake had ended, Seeterlin e-mailed Esseily, Maleyko, Jill Chochol (the executive of the instructional staff), and Michelle DeJaeger (the director of special education), indicating that there had been some confusion regarding the process of recommending salaries: "The recommendation of a starting pay was never clear from Special Ed. [Esseily] agreed with step 3 in one e-mail and argued for step 5 in another." Seeterlin further stated that he met with plaintiff, and plaintiff had conveyed to Seeterlin that Esseily told her $47,000 was available; Seeterlin stated that the salary for plaintiff should be decided by the following day because she was set to begin work on Monday. In another e-mail, DeJaegar stated that she spoke to Esseily, and Esseily told her that he never conveyed specifics to plaintiff regarding salary. In response to DeJaegar's e-mail, on January 19, 2017, at 7:25 p.m., Maleyko sent an e-mail stating: "We might want to hold off on processing [plaintiff] until we get some more reference checks completed because it seems as if she misrepresented what happened with [Esseily]." On the same night, at 7:54 p.m., Esseily sent an e-mail, apologizing for the confusion regarding the salary mix up:

> I would like to take this opportunity to apologize to each of you in regards to the process of hiring the potential resource teacher candidate. I did in fact send two separate emails that were contradicting. This caused confusion and put [Seeterlin] in a difficult position. . . .
>
> Initially, I felt that step 3 would be a good starting point for this candidate. After speaking to more of her references, including her current employer, they spoke of [plaintiff] in high regards. Additionally, when I called her about additional reference phone numbers, she did inquire about pay. She mentioned she was a single mom and it would be difficult for her to take a pay cut. I made it clear that she would have to discuss salary with HR. Therefore I sent an email supporting her starting pay at step 5 in case she declined due to salary.
>
> In retrospect, I should have put more thought before responding to emails or [plaintiff]. I understand this puts HR and the entire district in a bad position when communication is not clear. I assure you in the future I will be sure to communicate more thoroughly in terms of potential employees.

In response to Esseily's e-mail, Chochol wrote to Esseily, stating that she understood that the process of offering a salary at a level above step three might not have been clear, but there was some concern because plaintiff had conveyed to Seeterlin that Esseily had discussed a step five salary with her, and the "practice has typically been to defer to HR"; Chochol also stated to Esseily, "When recommending more than step 5, please clear with [DeJaegar] and send to me." There were no other e-mails regarding whether plaintiff misrepresented the nature of her conversations with Esseily or that defendant believed that she had been dishonest. Esseily also testified that there had been some confusion between him and the HR department regarding whether plaintiff would be recommended for a step three salary or a step five salary on the pay scale.

The evidence presented created a genuine issue of material fact as to whether defendant's decision not to hire plaintiff was motivated by its belief that plaintiff had misrepresented the nature of her conversation with Esseily regarding salary. Prior to the intake, plaintiff was set to begin work with defendant and there was no indication that there were any concerns with hiring plaintiff. Moreover, the evidence shows that, prior to defendant deciding not to hire plaintiff, it could have been clear to defendant that there had merely been a miscommunication regarding plaintiff's salary. Although Maleyko indicated initially that plaintiff may have misrepresented her conversation with Esseily, in a subsequent e-mail from Esseily, Esseily apologized for the confusion and stated that he should have thought before he responded to e-mails *and plaintiff*. These e-mail conversations took place prior to defendant deciding not to hire plaintiff. A jury could reasonably find that, at the time defendant decided not to hire plaintiff, defendant was aware that there had been a misunderstanding among defendant's employees regarding salary, that Esseily may have conveyed specific information to plaintiff regarding a salary of $47,000, and that defendant did not actually believe that plaintiff had made a material misrepresentation to Seeterlin regarding her conversation with Esseily. Thus, a jury reasonably could find that defendant's belief that plaintiff had been dishonest was not the motivating factor in refusing to hire her and instead was merely pretext for plaintiff's age having been the motivating factor in the decision.

Defendant also argues that it did not hire plaintiff because she provided an "incomplete" application that did not include her employment with Westwood or her current supervisor's name. Plaintiff presented sufficient evidence to create a genuine issue of material fact as to whether her age was the motivating factor in defendant's decision not to hire her, as opposed to her incomplete application. First, defendant's attempt to categorize the application as "incomplete" gives a distorted view. Seeterlin, in an e-mail dated January 19, 2017, acknowledged that plaintiff's "application was 2 years old" and thus had "no information on pay since 2015." Thus, defendant, as the possessor of the application, necessarily knew from the beginning of this process that the information contained in the application contained no new information since 2015. But there is no dispute that defendant had actual knowledge of plaintiff's current employment and pay at Westwood. Esseily testified that plaintiff told him during her interview that she worked for Westwood, and plaintiff followed up with Esseily, supplying information regarding her supervisor. Indeed, the evidence shows that two weeks prior to deciding not to hire plaintiff, defendant was aware of plaintiff's current employer, supervisor, and her current salary, yet defendant still scheduled plaintiff for an intake interview and to start work with defendant on January 24, 2017, *even though it knew that the Westwood*

*information was not contained in plaintiff's application.* It was not until after the intake interview on January 19, 2017, when defendant may have learned plaintiff's age, that defendant decided not to hire plaintiff. Thus, there was sufficient evidence to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for defendant's failure to offer plaintiff employment, instead of defendant's proffered reason of a stale or incomplete application.

Defendant also claimed that it decided not to hire plaintiff because she had unprofessionally resigned from her position with Westwood, by doing so before being officially offered the position with defendant. The parties dispute whether Esseily directed plaintiff to resign from her position with Westwood. Plaintiff testified that she did so at Esseily's urging because he told her that defendant would be contacting Westwood and Esseily thought it best that Westwood first hear that plaintiff was leaving from plaintiff herself. Esseily denied telling plaintiff to resign from Westwood. Regardless of this open factual question, the evidence establishes that Esseily and Seeterlin both were aware, as of January 10, 2017, that plaintiff had tendered her resignation to Westwood in order to work for defendant. Indeed, in an e-mail dated January 10, 2017, Seeterlin stated that he spoke to Westwood's HR department and learned that plaintiff already had resigned.[4] Nevertheless, defendant moved forward with the hiring process after having been made aware of this information. Notably, as previously noted, it was not until after the intake that any concern was expressed about hiring plaintiff. Therefore, when viewing this evidence in a light most favorable to plaintiff, there is a genuine issue of material fact as to whether defendant's decision to not hire plaintiff was based on the manner in which she resigned from her prior employment, as opposed to her age.

Defendant also asserts that it decided not to hire plaintiff because the principal at Robichaud provided a "somewhat negative" or "mixed" review of plaintiff. E-mail communications indicate that all of plaintiff's references were positive prior to plaintiff's intake interview on January 19, 2017; however, following the intake, Maleyko requested additional references because he believed plaintiff may have misrepresented her conversation with Esseily. On January 20, 2017, Esseily spoke with Learst; Esseily's notes from his conversation with Learst indicate that Learst found that plaintiff was organized and had developed great relationships with the students, so much so that when she left Robichaud, students were upset. However, Learst also found plaintiff's resignation to be unprofessional because she only worked a half day on her last day at Robichaud, she did not follow up with Learst or the director of special education, and she had not been officially hired by defendant when she resigned from Westwood. Learst also stated the following areas of concern regarding plaintiff: she was overly passionate and could become easily frustrated, but this behavior could be attributed to her passion for the students; when plaintiff had problems with certain technology used in the

---

[4] Contrary to this record evidence, Maleyko told plaintiff, after defendant informed plaintiff that she would not be hired, that Seeterlin did not become aware that plaintiff had resigned from her position with Westwood until he conducted the intake with plaintiff on January 19, 2017. Aside from the documentary evidence refuting Maleyko's claim, Seeterlin himself testified that he never told Maleyko that he learned of plaintiff's resignation from Westwood during the intake.

classroom, she would provide the students with alternate assignments instead of speaking with Learst; and plaintiff was very assertive in the classroom, which had previously caused disagreement with other teachers. However, Learst did not personally find plaintiff's assertive personality to be a weakness because "[w]e want Co-teachers to be strong and assertive." After Esseily sent Learst's reference to Maleyko, Maleyko replied, "I also don't like the way that she treated Westwood so unprofessionally. That is what I heard from my sources. She could turn around and do the same to us." The only critique mentioned by Maleyko following the reference from Learst was the unprofessional way in which she treated Westwood; there is no evidence that the other critiques from Learst were factors in defendant's decision not to hire plaintiff. As stated previously, defendant was aware that plaintiff resigned from Westwood without being officially hired by defendant but moved forward with the hiring process nonetheless; moreover, it was not until *after* the intake meeting that Maleyko decided additional references were needed. Given the record as a whole, a jury could reasonably find that Learst's review was not the motivating factor behind defendant's decision to not hire plaintiff and that her age was the motivating factor.

In conclusion, the evidence shows that defendant's reasons for not hiring plaintiff changed both before and during litigation, the concerns regarding whether to hire plaintiff did not arise until right after defendant may have learned of plaintiff's age at the intake meeting, and there was evidence presented that would allow a jury to reasonably find that each of defendant's proffered reasons for not hiring plaintiff were not the motivating factors and that her age was the motivating factor. Thus, plaintiff presented evidence to create a genuine issue of material fact as to whether defendant's reasons for not hiring her were a pretext for age discrimination. Accordingly, the trial court erred when it granted defendant's motion for summary disposition on plaintiff's CRA claim.

## III. BREACH OF CONTRACT AND PROMISSORY ESTOPPEL CLAIMS

Plaintiff also argues that the trial court erred in granting defendant's motion for summary disposition in regard to her claims for breach of contract and promissory estoppel. We disagree.

The parties do not dispute that there was no written contract between the parties. The trial court dismissed plaintiff's breach of contract and promissory estoppel claims, holding that MCL 380.1231(1) categorically bars teachers from bringing a cause of actions against a school for breach of an oral contract. MCL 380.1231(1) provides:

> [T]he board of a school district shall hire and contract with qualified teachers. Contracts with teachers shall be in writing and signed on behalf of the school district by a majority of the board, by the president and secretary of the board, or by the superintendent of schools or an authorized representative of the board. The contracts shall specify the wages agreed upon.

Plaintiff is correct that, generally, promissory estoppel claims may still proceed even if an oral contract claim is barred by the statute of frauds. In *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982), our Supreme Court recognized that the doctrines of "estoppel and promissory estoppel have developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds]." The Court noted that

"[i]t has been suggested that if the statute lacked such equitable 'loopholes,' the outcry would soon be such that amendments would be passed in short order." *Id*. The Court concluded that "[s]ince the statute of frauds only applies to certain 'contracts,' recovery based on noncontractual promises falls outside the scope of the statute of frauds." *Id*. at 370.

However, in *Martin v East Lansing Sch Dist*, 193 Mich App 166, 180; 483 NW2d 656 (1992), this Court specifically held that because MCL 380.1231[5] requires "contracts between teachers and boards of education [to] be in writing and signed by the proper entity," any claims of promissory estoppel were barred because "[t]o allow verbal representations by staff administrators to bind the district without a written contract or action by the board itself would be to ignore the statute." This Court's decision in *Martin* is binding. MCR 7.215(J)(1). Thus, with respect to plaintiff's claim of a breach of an oral contract, that claim cannot be sustained. *Martin* has interpreted MCL 380.1231(1) as requiring contracts between a teacher and a school board to be in writing and that the approval of a school board is a condition precedent to the formation of a contract; therefore, the trial court did not err in dismissing plaintiff's breach of contract claim. Likewise, *Martin* forecloses any promissory estoppel claims arising out of oral promises. Therefore, the trial court did not err in granting defendant's motion for summary disposition with respect to plaintiff's breach of contract claim and her promissory estoppel claim.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as no party has prevailed in full. MCR 7.219.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

---

[5] MCL 380.1231(1), as it existed at the time *Martin* was decided, was substantively the same as the present version quoted in this opinion. See 1976 PA 451, § 1231.